**Chan LAM, et al., Relators,**

v.

**CITY OF ST. PAUL, Minnesota, et al., Respondents.**

No. A05–1706.

Court of Appeals of Minnesota.

May 30, 2006.

Christopher K. Wachtler, Collins, Buckley, Sauntry & Haugh, P.L.L.P., St. Paul, MN, for relators.

Manuel Cervantes, St. Paul City Attorney, Rachel Gunderson, Assistant City Attorney, St. Paul, MN, for respondents.

Considered and decided by LANSING, Presiding Judge; STONEBURNER, Judge; and COLLINS, Judge.

## OPINION

COLLINS, Judge.*

In this certiorari appeal from a St. Paul City Council decision, relators contend that the city council's denial of relators' license applications should be reversed and that this court has jurisdiction to decide the dispute. Because the city council's decision was quasi-judicial, jurisdiction is proper in this court. Because the land use permitted by the conditional-use permit was not extinguished just because certain business activity ceased, we reverse.

## FACTS

Relators Chan Lam and Ha Tran, d/b/a Ha Auto Repair, challenge respondent St. Paul City Council's denial of their applications for auto repair garage and second hand dealer-motor vehicle licenses.

The subject property has been used mainly for auto repair and sales since 1962. In 1994, having met the condition that he "obtains and maintains a dealership repair garage license ... not a general repair garage license," the owner was granted a conditional-use permit (CUP) that allowed used-vehicle sales with auto repair as an accessory use.

In 1999, new owner R & B Automotive (R & B) obtained a general license to

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

conduct an automobile-repair business on the property; R & B also sold cars there into 2001, but did not have the required license to do so. In late 2001, an inspector from Saint Paul's Office of License, Inspections and Environmental Protection (LIEP) discovered that R & B was not in compliance with the 1994 CUP because while the auto-repair activity continued, used-vehicle sales had been discontinued. LIEP notified R & B of the discovered noncompliance, but because of a zoning moratorium that would have precluded R & B from seeking rezoning or obtaining a different CUP, LIEP took no enforcement action.

The city council rezoned the property in 2003 and again in 2004 to classifications that do not permit automobile sales or repair. In November 2004, an LIEP inspector again notified R & B that general auto repair was not permitted on the property, but R & B did nothing in response, and LIEP took no enforcement action thereafter.

In January 2005, relators contacted LIEP about the possibility of purchasing the property and operating an auto-repair business there. LIEP informed relators that LIEP could approve licenses for used-vehicle sales and auto repair as accessory to the autosales business as allowed by the CUP, but that relators would have to apply to the city planning commission for a legal-nonconforming-use permit if they wanted to use the property for general auto repair only. Relators elected to apply to LIEP for auto repair garage and second hand dealer-motor vehicle licenses and simultaneously purchased the property. LIEP recommended approval of the licenses based upon an inspector's opinion that the uses permitted by the extant CUP became legal nonconforming uses at the time the property was rezoned.

Following a hearing on the licensing application, a legislative hearing officer sent the matter to the city council with a recommendation that the licenses be issued with 16 conditions recommended by LIEP and acceptable to relators. The city council referred the matter to an administrative-law judge (ALJ) to determine whether the CUP had expired. Supported by detailed findings and conclusions, the ALJ also recommended issuance of the licenses subject to the enumerated conditions.

When the matter came before the city council in July 2005, the council rejected the ALJ's findings and recommendations, made its own findings, and denied the application for the licenses. In support of its decision, the council found that the property had not been used for auto sales either as of the date of the 2003 rezoning or at any time during the following 365 days. Noting that property must generally be used in conformance with current zoning classifications when a nonconforming use is discontinued for 365 days, St. Paul, Minn. Legislative Code § 62.106(g) (2005), the council concluded that the only permitted uses of the property are those that conform to the current zoning classification. The city council therefore denied the application for licenses based on its conclusion that relators' intended uses do not comply with the zoning code, and because no license may be granted without such compliance. This appeal follows.

### ISSUES

I. Does this court have subject-matter jurisdiction to review this matter?

II. Did the St. Paul City Council err by interpreting the zoning code as prohibiting approval of relators' license application?

### ANALYSIS

#### I.

Respondents argue that jurisdiction to decide this matter properly lies in

the district court because the city council denied the license application pursuant to Minn.Stat. §§ 462.357 and 462.3595 (2004). Minnesota law provides that "[a]ny person aggrieved by an ordinance, rule, regulation, decision or order of a governing body or board of adjustments and appeals acting pursuant to sections 462.351 to 462.364 may have such ordinance, rule, regulation, decision or order, reviewed by an appropriate remedy in the district court." Minn.Stat. § 462.361. The city council tied the license denial to the 2003 rezoning decision. Rezoning decisions are generally considered legislative acts and are therefore not reviewable by this court on certiorari, but only by a direct action in district court. *Honn v. City of Coon Rapids*, 313 N.W.2d 409, 416 (Minn.1981). Here, however, the licensing decision does not implicate an ordinance, rule, regulation, decision, or order from which an aggrieved party has recourse by virtue of section 462.361 in the district court. Although zoning is integral to the context, the gravamen of this dispute is denial of licenses, not a rezoning decision.

■ Discretionary licensing decisions made according to the process employed here may generally be considered quasi-judicial acts reviewable by this court through a writ of certiorari. *See Pierce v. Otter Tail County*, 524 N.W.2d 308, 309 (Minn.App.1994) (holding that a city council's act is considered quasi-judicial if it is "the product or result of discretionary investigation, consideration, and evaluation of evidentiary facts"), *review denied* (Minn. Feb. 3, 1995). And it is clear that, unless otherwise provided by statute, a petition for a writ of certiorari is the exclusive procedure for reviewing an administrative agency's quasi-judicial decision. *Willis v. County of Sherburne*, 555 N.W.2d 277, 282 (Minn.1996). In such circumstances, this court has exclusive certiorari jurisdiction.

*Heideman v. Metro. Airports Comm'n*, 555 N.W.2d 322, 324 (Minn.App.1996).

Because the city council's licensing decision constitutes a quasi-judicial act, certiorari jurisdiction in this court is proper.

## II.

■ Relators challenge the city council's denial of their applications for auto repair garage and second hand dealer-motor vehicle licenses. A city council is vested with broad discretion in determining whether or not to issue a license, and a court's scope of review of such a determination is narrow. *See Wajda v. City of Minneapolis*, 310 Minn. 339, 343, 246 N.W.2d 455, 457 (1976) (addressing the denial of a liquor license). We reverse a decision of a city council only if it is "fraudulent, arbitrary, unreasonable, unsupported by substantial evidence, not within its jurisdiction, or based on an error of law." *See Dokmo v. Indep. Sch. Dist. No. 11*, 459 N.W.2d 671, 675 (Minn.1990) (applying this standard to decision of a school board). If the city engaged in reasoned decision-making, we will affirm its decision even though the court may have reached another conclusion. *See State by Khalifa v. Hennepin County*, 420 N.W.2d 634, 639 (Minn.App.1988), *review denied* (Minn. May 4, 1988).

■ The crux of this dispute is the city council's interpretation of the zoning code as prohibiting the granting of relators' requested licenses. As noted, the council found that the subject property had not been used for auto sales either as of the date of the 2003 rezoning or for 365 days immediately thereafter. Reasoning that the prior use of the property solely for auto repairs was not lawful because the CUP allowed auto repair only as an accessory to auto sales, the council concluded that relators' intended uses are not in compliance with the zoning code because no

lawful use of the property had been established within 365 days after the 2003 rezoning. The council concluded that the only permitted uses of the property are those that conform to the new zoning classification. The license application was therefore denied because the St. Paul code provides that "no new license shall be granted without full compliance with" all of St. Paul's zoning requirements. St. Paul, Minn. Legislative Code § 310.03 (2005).

It is clear that by engaging in auto repair generally and not as an accessory to used-auto sales, R & B was not actually using the property consistently with the CUP within 365 days following the 2003 rezoning. Relators argue, and the ALJ determined, that R & B's business activities became legal nonconforming uses upon rezoning. But the city council determined that there was no lawful use of the property at the time of rezoning.

While there is scant caselaw addressing the issue presented, we are guided by *Hooper v. City of St. Paul*, 353 N.W.2d 138, 141 (Minn.1984), which stands for the proposition that the failure to comply with licensing ordinances does not make the property's use unlawful. In *Hooper*, the City of St. Paul argued that the use of a remodeled carriage house as a residence was unlawful when building permits for the house were not procured for either the original construction or the remodel. 353 N.W.2d at 141. There, the court noted that "[t]he general rule that only existing lawful uses are entitled to due process protection as nonconforming uses is directed primarily to the protection of uses established in compliance with then existing zoning classifications." *Id.* The court therefore held that "[v]iolations of ordinances unrelated to land use planning do not render the type of use unlawful" and noted that the city's remedy was enforcement of the building code, not "denying the owners the right to continue the existing two-family residential use of the property, a use permitted under the zoning code in effect when the use was established." *Id.*

Likewise, it is inappropriate to conclude here that no lawful use of the land existed as of the date of rezoning because of the failure to maintain licenses for or actually engage in certain permitted activities. Such a conclusion fails to recognize that a permitted use exists independently of how the land is actually used and that a use does not cease to be permitted just because certain business activity is discontinued.

A nonconforming use is defined by code as "[a] lawful use existing on the effective date of adoption ... or amendment of this code but that is not now permitted in the district in which it is located." St. Paul, Minn. Legislative Code § 60.215N (2005). The use of the land for auto repair as an accessory to auto sales became a nonconforming use when the 2003 zoning amendment took effect because even though no such business was then being conducted, that use existed by virtue of the CUP as a lawful use prior to the amendment of the zoning code.

And "[i]t is a fundamental principle of the law of real property that uses lawfully existing at the time of an adverse zoning change may continue to exist until they are removed or otherwise discontinued." *Hooper*, 353 N.W.2d at 140. The St. Paul Legislative Code provides that when a permit's conditions are not being complied with, the property owner is entitled to notice and a public hearing before the revocation or amendment of a permit. St. Paul, Minn. Legislative Code § 61.108 (2005). The CUP in this case was never so revoked or amended, and respondent admits that it did not expire. And the St. Paul Legislative Code does not provide for

any automatic revocation, amendment, or expiration of a CUP. The uses permitted by the CUP therefore continue to exist.

## DECISION

Certiorari jurisdiction in this court is proper because the city council's licensing decision constitutes a quasi-judicial act. Although nonconforming-use activity was not actually conducted within 365 days following the 2003 rezoning, because the CUP was never revoked or otherwise extinguished, the use of the subject property for auto repair as an accessory to auto sales existed as a lawful use before the 2003 rezoning and thus became a nonconforming use upon that rezoning and continuing thereafter. Respondent St. Paul City Council's decision to the contrary is therefore reversed, and we remand for action on relators' license application consistent with this opinion.

**Reversed and remanded.**