**COUNTY OF MORRISON, Respondent,**

v.

**Gordon K. WHEELER, Sr., et al., Appellants.**

No. A05–2002.

Court of Appeals of Minnesota.

Oct. 10, 2006.

Randall D.B. Tigue, Randall Tigue Law Office, P.A., Minneapolis, MN, for appellant.

Paul D. Reuvers, Pamela J. Whitmore, Iverson Reuvers, Bloomington, MN, for respondents.

Considered and decided by KALITOWSKI, Presiding Judge; RANDALL, Judge; and PETERSON, Judge.

## OPINION

RANDALL, Judge.

Appellants, as owners of an adult business, argue: (a) their adult business was open before the enactment of the county ordinance that provided the basis for enjoining its business, so the business is entitled to lawful-nonconforming status under the ordinance; and (b) the ordinance under which the business was enjoined is unconstitutional under the First Amendment because it enacted content-based regulation of constitutionally protected speech, failed to serve a substantial governmental interest, and did not allow for reasonable alternative avenues of communication.

Appellants further argue that because they sufficiently challenged the county's evidence of secondary adverse effects of

adult-use businesses, the burden shifted to the county to produce further evidence showing that its existing regulation was inadequate to address those effects. Finally, appellants argue that the record does not support the county's purported basis for the ordinance.

Respondents initially argue that appellants cannot challenge the constitutionality of the ordinance. We reject respondent's argument that the issue of constitutionality of the ordinance is not ripe for review by this court. We will approach it on the merits.

The district court did not err when it granted summary judgment for the county and upheld the constitutionality of the ordinance. The district court did not err when it permanently enjoined operation of the adult-use business. The district court properly granted summary judgment when it determined that the adult-use business did not acquire status as a legal-nonconforming use under the ordinance.

## FACTS

In 1995, Morrison County (respondent or the county) considered the issue of adult-entertainment zoning and enacted Section 1202.8 of its zoning code. This zoning ordinance (1995 AUB ordinance) restricted adult-use businesses (AUBs) from operating within 1,320 feet (one-quarter mile) of residential districts, daycare centers, schools, parks, playgrounds, or religious institutions, or within 200 feet of a building licensed to sell alcoholic beverages. In December 2001, the county enacted a moratorium prohibiting any new AUBs in the county for one year. In November 2002, the moratorium was extended for an additional one-year period to December 12, 2003.

On or about October 17, 2003, appellants purchased a piece of property within Morrison County, intending to open an AUB at this location. This property was approximately 930 feet from a building licensed to sell alcoholic beverages and less than 1,320 feet from two dwelling units. Appellants opened the business, Lookin Fine Smut & Porno (LFSP), between October 18 and October 21, 2003.

On October 21, 2003, before the moratorium expired, the county amended the existing AUB ordinance (2003 AUB ordinance) and passed another ordinance that regulated sexually oriented businesses (SOB ordinance). These actions did not become effective until November 3, 2003. The differences between the 2003 AUB ordinance and the 1995 AUB ordinance included an increase in set-back requirements from businesses licensed to sell alcoholic beverages from 200 feet to 1,320 feet, imposing a set-back requirement from "any dwelling unit" rather than from "residential districts, and language restricting AUBs from operating within shore land commercial districts. The county cited concerns over the secondary effects of AUBs as the primary rationale for the changes made. This conclusion was drawn after considering a series of studies that allegedly evidenced an increase in certain crimes, a decrease in property values, and an increase in transmission of sexually transmitted diseases in geographical areas surrounding AUBs.

The county filed a complaint with the district court on October 30, 2003, alleging that LFSP violated the county's moratorium on opening or expanding AUBs within the county; that LFSP was in violation of the set-back requirements of the 2003 AUB ordinance; or, in the alternative, that LFSP was in violation of other health and food-and-beverage ordinances. With regard to the health ordinance, the county alleged, and LFSP acknowledged, that LFSP did not have a properly functioning septic system. The complaint sought a

permanent injunction from the district court to enjoin LFSP from operating as an AUB.

Appellants challenged the request for a permanent injunction based on grounds that they were not in violation of the 1995 zoning ordinance, which was in effect at the time the business opened; that the violation of the health ordinance did not disqualify LFSP from being exempted from subsequent ordinances; and that the interim moratorium was unconstitutional as a complete ban against protected speech. Appellants claim that the 2003 AUB ordinance, even if applicable to appellants' business, was not adequately supported by the findings of the county and would have the effect of suppressing or substantially reducing access to constitutionally protected speech. Thus, appellants claimed a violation of their rights under the First and Fourteenth Amendments to the United States Constitution. Appellants also filed a counterclaim under 42 U.S.C. § 1983 to redress the county's alleged deprivation of their constitutional rights.

The district court issued a temporary injunction that prohibited appellants from using their property for "any purpose until such time as the property is equipped with a septic system appropriate for the intended use", dismissed the food-and-beverage compliance complaint, and reserved the issues involving the moratorium and newly enacted ordinance. The parties later stipulated to a plan for removing septic materials. The stipulation was approved by the district court and provided that the appellant would be permanently enjoined from operating the business until the county approved a septic-materials removal plan. This stipulation also stated that "the [county] will consider the septic issue separate from the adult use issue."

Both parties moved for summary judgment. The district court issued a decision on the motions and ruled that the moratorium was an unconstitutional based speech regulation "that failed to provide *any* alternative avenue for expression, with respect to either location ... or content." The district court also determined that LFSP did not have grandfather rights under the 1995 zoning ordinance because it was not a lawful-nonconforming use at the time the 2003 AUB ordinance went into effect. The court deferred ruling on the constitutionality of the 2003 AUB ordinance and the SOB ordinance and allowed the parties to further develop the issues at an evidentiary hearing.

The district court convened an evidentiary hearing for the purposes of determining whether the county provided adequate evidence to support its enactment of the 2003 AUB ordinance and whether the 2003 AUB ordinance provided sufficient alternative locations for AUBs in Morrison County. The district court granted the county's motion for summary judgment, determining that the AUB ordinance was content neutral, was based on a substantial governmental interest, and provided alternative avenues for expressing protected communication.

## ISSUES

1. Did the district court err in determining that LFSP did not attain lawful-nonconforming use rights before the enactment of Morrison County's permanent zoning ordinance?

2. Is appellants' challenge to the constitutionality of the 2003 AUD ordinance ripe for review?

3. Did the district court properly determine that Morrison County's permanent zoning ordinance does not have the effect of suppressing or greatly denying

access to constitutionally protected speech?

 A. Does a government have an increased evidentiary burden when it seeks to substitute or amend an existing regulation that has the expressed purpose of countering adverse secondary effects purportedly caused by AUBs?

 B. Did appellants succeed in casting direct doubt on the county's evidence or factual findings that support the 2003 AUB ordinance?

 C. Did the 2003 AUB ordinance provide reasonable alternative avenues of communication?

## ANALYSIS

### I. Grandfather Rights

■ The first issue is whether the LFSP properly established itself as a business and was eligible to receive lawful-nonconforming-use rights (grandfather rights) under the county's amended AUB ordinance. If LFSP was a legally established business before the amendment of the AUB ordinance, regardless of issues with the septic system, LFSP may apply for a certificate and be allowed to exist under the amended AUB ordinance as a "grandfathered-in" business. If not, LFSP is subject to the laws in existence at whatever time it became (or becomes) a lawful, established business.

■ "Interpretations of state statutes and existing local zoning ordinances are questions of law that this court reviews de novo." *Buss v. Johnson,* 624 N.W.2d 781, 784 (Minn.App.2001). Zoning decisions of a municipal body that require judgment and discretion are reviewed to determine whether the municipal body acted arbitrarily, capriciously, or unreasonably, and whether the evidence reasonably supports the decision made. *See Frank's Nursery Sales, Inc. v. City of Roseville,* 295 N.W.2d

604, 608 (Minn.1980). An action is reasonable, or not arbitrary, when it bears a reasonable relationship to the purpose of the ordinances. *See Arcadia Dev. Corp. v. City of Bloomington,* 267 Minn. 221, 227, 125 N.W.2d 846, 851 (1964). Despite a municipality's broad discretionary power, however, the reviewing court may reverse the municipality's decision if its reasons are "legally insufficient or if the decision is without factual basis." *Amoco Oil Co. v. City of Minneapolis,* 395 N.W.2d 115, 117 (Minn.App.1986).

■ "A residential zoning ordinance may constitutionally prohibit the creation of uses which are nonconforming, but existing nonconforming uses must either be permitted to remain or be eliminated by use of eminent domain". *County of Freeborn v. Claussen,* 295 Minn. 96, 99, 203 N.W.2d 323, 325 (1972), (citing *Hawkins v. Talbot,* 248 Minn. 549, 80 N.W.2d 863 (1957)). The supreme court later qualified this holding by determining that "uses lawfully existing at the time of an adverse zoning change may continue to exist until they are removed or otherwise discontinued." *Hooper v. City of St. Paul,* 353 N.W.2d 138, 140 (Minn.1984). *Hooper* states that "[v]iolations of ordinances unrelated to land use planning do not render the type of use unlawful." *Id.* at 141. Similarly, the supreme court held that "[t]he general rule that only existing lawful uses are entitled to due process protection as nonconforming uses established is directed primarily to the protection of uses established in compliance with then existing zoning classifications." *Id.*

 Both parties rely on *Hooper v. St. Paul* as decisive of whether LFSP was a lawful-nonconforming use. In *Hooper,* the Minnesota Supreme Court determined that the use of the property in question as a carriage house was a valid nonconforming use although the owners had not ob-

tained proper building permits for alterations under the former regulatory scheme. *Id.* at 142. The court determined that St. Paul's remedy must be sought "in the enforcement provision of the building code" not "in denying the owners the right to continue the existing [nonconforming] use of the property, a use permitted under the zoning code in effect when the use was established." *Id.*

Appellants assert that the rationale utilized in *Hooper* is directly applicable here and that their use of the property under the 1995 AUB ordinance, the zoning code in effect when LFSP opened for business, was proper when the use was established. Appellants recognize that the county has the right to enforce the applicable ordinances and regulations regarding the septic system, but assert that LFSP was a lawful-conforming use under the 1995 AUB ordinance and that the county's attempted enforcement actions are wholly separate from the AUB ordinance passed by the county after the establishment of LFSP. As such, appellants contend they have a right to be considered a lawful-nonconforming use.

The county determined that LFSP did not qualify as a lawful-nonconforming use because it had not sought approval of a plan to rectify pre-existing septic issues. The county contends that without abiding by all county ordinances, LFSP could not have become a legal entity, much less a lawful-nonconforming use. The county argues that LFSP, unlike the carriage house in *Hooper*, was never a lawful use of the property due to the septic issues, and as such cannot seek protection under the guise of a lawful-nonconforming use.

The district court's October 15, 2004 order determined that the septic issue is related to land-use planning, and thus distinguished the rationale of *Hooper* and the cases it relied on. To support this decision, the court noted Morrison County Land Use Control Ordinance sections: (1) 101 (regulating "the location, size, use, and arrangement of lots and buildings in and for the unincorporated portions of Morrison County, Minnesota dividing the county into zoning districts, and providing sewage control and land subdivision regulation for the purpose of promoting health, safety, morals, and general welfare of Morrison County"); (2) 304.6 (discussing on-site sewage treatment systems); (3) 503.1 (requiring land-use permits for "the installation and/or alteration of sewage-treatment systems"); (4) 503.3 (requiring work authorized by a sewer permit to be completed within six months); (5) 703.1 (regulating on-site sewage-treatment-system setbacks in shoreland areas); (6) 909.4 (discussing nonconforming sewage-treatment systems); and (7) 1502.5(e) (providing criteria for evaluating planned-unit developments).

The district court was correct to point out Morrison County's numerous regulations that deal specifically with sewage management within its Land Use Control Ordinance. These regulations underscore the importance that the county places on sewage management and recognize that sewer and septic management are part and parcel of land-use planning. If businesses are able to avoid compliance with these requirements, a county's police power to combat potential public nuisances or uses that are unsanitary or unsafe for humans is nearly destroyed. *See Almquist v. Town of Marshan*, 308 Minn. 52, 64, 245 N.W.2d 819, 825 (Minn.1976) (noting broad police powers of counties and municipalities in land-use planning).

Unlike the facts in *Hooper*, when the carriage house in question had existed in its location for at least 60 years and been in conformance with local zoning regulations before the regulation change, LFSP

attempted to open its doors *just days before* the enactment of a regulation change at a location that had not previously been in conformance with septic regulations. While appellants may have called a company regarding the regular pumping of the septic tanks, the county was not consulted regarding this proposed solution. The county suspended the food and beverage licenses of the previous occupant of this location for failure to comply with applicable septic regulations. Without these licenses, the county restricted the previous occupants from operating their business at this location to protect the health of county citizens and protect the natural resources surrounding the facility. Until the previous owners vacated the location, the county remained in continuous contact with them to assure that the septic tanks were being pumped before every event hosted at this location.

This vigilance toward the septic problems at the location in question shows the county's considerable interest in how this land is used and retaining its ability to regulate such use. If properties were able to avoid this valid form of land-use regulation, we would effectively strip the county of its ability to protect its citizens from public nuisances or unsafe or unsanitary business practices.

Appellants also note a stipulation in the record under which the parties agreed to consider the septic issue separate from the adult-use issue and agreed to a permanent injunction precluding operation of LFSP until appellants comply with the relevant septic requirements. Appellants claim that this stipulation and the injunction agreed to underscore the county's other

means of enforcement and undercuts the argument that LFSP cannot be a lawful-nonconforming use because of the septic issues. We disagree with appellant's restrictive interpretation of the stipulation. The stipulation simply shows that there are two distinct arguments in this case and underscores the duty that LFSP had to obtain permission from the county to correct the problems within the septic system. Had LFSP approached the county before opening for business, the administrative zoning process would have been the appropriate forum for this issue. Because LFSP failed to seek the county's approval, the county was forced to seek an injunction of LFSP's noncomplying use of the land.

## II. Permanent Injunction

■ Morrison County brought this action in a district court to obtain a permanent injunction which halted any operation of LFSP's business. LFSP defended on the merits and raised certain defenses which included the constitutional claims that were briefed and argued before this court. Morrison County and LFSP stipulated that the constitutional and septic system issues would be considered separately. The district court held that the septic system was non-conforming under Morrison County's applicable land-use ordinances and that the 2003 AUB ordinance satisfied the tests that the Supreme Court has put forward to safeguard protected speech.

On appeal, Morrison County claims that LFSP did not have standing to challenge the constitutionality of the 2003 AUB ordinance in district court and therefore the district court had no jurisdiction[1] to hear the constitutional issues.

---

1. The county phrases its argument variously in terms of jurisdiction, standing, and ripeness. The Minnesota declaratory judgment statute, Minn.Stat. § 555.01–16 (2004), "does not provide a separate test for standing.

Rather, the statute is directed towards the 'ripeness' of a dispute, i.e., 'when' it may be brought; standing, on the other hand, is concerned with 'who' may bring a suit." *McKee v. Likins*, 261 N.W.2d 566, 570 (Minn.1977) n.

After examining the history of the present controversy as set out in the record, we conclude that when Morrison County sought a permanent injunction, it was clear that the constitutionality of the 2003 AUB ordinance would be at issue. The parties stipulating that the constitutional issues and the septic system issues would be considered separately show understanding of the parties that the district court would, at some point, consider the constitutional issues.

With this record, we reject Morrison County's argument that the district court did not have jurisdiction to hear the constitutional issues. The district court had jurisdiction to hear these issues. The court entered a final judgment on the constitutionality of the 2003 AUB ordinance, finding in favor of Morrison County. LFSP filed and served a proper and timely appeal.

### III. Constitutional Challenge

■ The district court at summary judgment upheld the constitutionality of the 2003 Morrison County AUB ordinance. Summary judgment is appropriate when no genuine issues of material fact exist and a party is entitled to judgment as a matter of law. *City of Elko v. Abed*, 677 N.W.2d 455, 460 (Minn.App.2004), *review denied* (Minn. June 29, 2004); Minn. R. Civ. P. 56.03. On appeal from summary judgment, this court asks two questions: whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *Cummings v. Koehnen*, 568 N.W.2d 418, 420 (Minn.1997). On undisputed facts, this court reviews whether the district court erred in its application of the law. *City of Elko*, 677 N.W.2d at 460. The constitutionality of an ordinance presents a legal

question, reviewable de novo by this court. *Id.*

The United States Supreme Court has spoken on ordinances that regulate adult-entertainment businesses and set forth a test to determine if a local governmental unit has unfairly suppressed or denied access to constitutionally protected speech. In *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), the Supreme Court used a several-step analysis. First, the Court determined that the ordinance in question did not ban AUBs altogether; rather, it only required a minimum distance between adult theaters and sensitive locations. *Id.* at 46, 106 S.Ct. at 928. Therefore, the regulation was merely a time, place, and manner regulation. *Id.* The Court considered whether the ordinance was content-neutral or content-based. It determined that because the ordinance was aimed at curing harmful secondary effects of adult theaters and not the content of the movies they showed, the ordinance was content-neutral. *Id.* at 47–49, 106 S.Ct. at 929–30. Next, the court examined whether the ordinance was designed to serve a substantial governmental interest. Finally, the court concluded that reasonable alternative avenues of communication remained available. *Id.* at 51–54, 106 S.Ct. at 930–32.

In *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002), the Court again used the *Renton* analysis to determine whether a local ordinance adequately left protected speech reasonably available. In discussing the burden on a party to successfully challenge a municipality's regulation, the Court stated:

---

1. The county raises no cognizable argument that this court lacks subject matter jurisdiction to hear this appeal.

In *Renton,* we specifically refused to set such a high bar for municipalities that want to address merely the secondary effects of protected speech. We held that a municipality may rely on any evidence that is "reasonably believed to be relevant" for demonstrating a connection between speech and a substantial, independent government interest. 475 U.S. at 51–52, 106 S.Ct. 925; *see also, e.g., Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 584, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (Souter, J., concurring in judgment) (permitting municipality to use evidence that adult theaters are correlated with harmful secondary effects to support its claim that nude dancing is likely to produce the same effects). This is not to say that a municipality can get away with shoddy data or reasoning. The municipality's evidence must fairly support the municipality's rationale for its ordinance. If plaintiffs fail to cast direct doubt on this rationale, either by demonstrating that the municipality's evidence does not support its rationale or by furnishing evidence that disputes the municipality's factual findings, the municipality meets the standard set forth in *Renton.* If plaintiffs succeed in casting doubt on a municipality's rationale in either manner, the burden shifts back to the municipality to supplement the record with evidence renewing support for a theory that justifies its ordinance. *See, e.g., Erie v. Pap's A.M.,* 529 U.S. 277, 298, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000) (plurality opinion).

*Id.* at 438–39, 122 S.Ct. at 1736.

Appellants allege that the county's 2003 AUB ordinance is unconstitutional because it has the effect of suppressing or greatly denying access to constitutionally protected speech. Appellants do not argue that the 2003 AUB ordinance bans AUBs altogether. Thus, the first step of the Su-

preme Court's test is not in question. The regulation only limits the location of AUBs and as such qualifies as a time, place, and manner restriction of speech, which has been upheld by the Supreme Court. *See Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). Similarly, the county cited adverse secondary effects of AUBs as the reason for passing the 2003 AUB ordinance. Similar to *Renton,* it was not the content of the speech within AUBs that the ordinance sought to regulate, making the ordinance content-neutral. The question regarding the constitutionality of the 2003 AUB ordinance is whether the ordinance was designed to serve a substantial governmental interest and whether reasonable alternative avenues of communication remained available.

Appellants specifically assert that because Morrison County's 1995 AUB ordinance sought to protect county citizens from adverse secondary effects of AUBs, the county must show that the 1995 AUB ordinance was insufficient to accomplish the county's governmental interest. To support their claim, appellants argue that the county's evidence of adverse secondary effects of AUBs was sufficiently challenged by appellants' evidence, so that the burden shifted to the county to supplement the record to renew support for the county's theory. Finally, appellants assert that the 2003 AUB ordinance so greatly restricts potential locations for AUBs within the county that it removes reasonable alternative avenues of communication.

We must determine: (1) whether there is an increased evidentiary burden on a government when it seeks to substitute or amend an existing regulation that has the expressed purpose of countering adverse secondary effects purportedly caused by AUBs; (2) whether appellants have suc-

ceeded in casting direct doubt on the county's evidence or factual findings that support the 2003 AUB ordinance; and (3) whether the 2003 AUB ordinance provides reasonable alternative avenues of communication.

> *Does a government have an increased evidentiary burden when it seeks to substitute or amend an existing regulation that has the expressed purpose of countering adverse secondary effects purportedly caused by AUBs?*

■ Must Morrison County establish the 1995 AUB ordinance has been ineffective in reducing secondary effects of AUBs within the county before passing a subsequent regulation? Appellants argue that such a burden exists and that the district court erred in concluding it does not.

The *Renton* case has similarities to this case. In *Renton,* the Supreme Court was asked to consider whether the city of Renton could rely upon evidence gathered from outside its surrounding areas to sustain the ordinance. The Court stated that because *Renton* had no AUBs within its borders, it did not have a reasonable opportunity to study the effects within its own locale. *Renton,* 475 U.S. at 51, 106 S.Ct. at 931. Specifically, the Court noted that "The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already gathered by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that city addresses. *Id.* at 51–52, 106 S.Ct. at 931.

The Supreme Court in *Alameda Books* also considered an analogous argument from adult businesses affected by a city ordinance. *Alameda Books* noted that alternative conclusions on the same evidence may be possible, but that requiring a government to counter alternative conclusions would force communities to show not only that the evidence supports a governmental interest, but also that the evidence does not provide support for any other approach to serve that interest. *Alameda Books, Inc.,* 535 U.S. at 438, 122 S.Ct. at 1736. The Court concluded that the challenged approach to interpreting the evidence was a "plausible reading" but not the "compelled reading" of the study in question. *Id.* The court stated that precedent held that "a municipality may rely on any evidence that is 'reasonably believed to be relevant' for demonstrating a connection between speech and a substantial, independent government interest." *Id.* (citing *Renton,* 475 U.S. at 51–52, 106 S.Ct. at 930–31 and *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 584, 111 S.Ct. 2456, 2469–70, 115 L.Ed.2d 504 (1991) (Souter, J., concurring in judgment)). This court previously determined that *Alameda Books* did not heighten the *Renton* evidentiary standard for a municipality in showing that its enactment of an ordinance to regulate adult establishments serves a substantial government interest. *City of Elko,* 677 N.W.2d at 464.

Appellants argue that a different standard should apply in amending an ordinance and that the county must be able to show that its existing regulation proved inadequate to reduce the adverse secondary effects of the AUBs existing within the county. While appellants' argument is understood, it leads to the necessary conclusion that communities that have already attempted to deal with adverse secondary effects through ordinances must compile information showing that amendment of the ordinances is needed. This argument directly opposes the holding in *Renton* and would impose a harsh rule on governments seeking to confront what is seen as adverse secondary effects.

*Renton* and *Alameda Books* provide the framework by which the court must determine whether the evidence used by the county is sufficient. Appellants argue that the district court erred in concluding that they did not sufficiently call into question the supporting evidence for the 2003 AUB ordinance. There exists no precedent restricting the discretionary power of municipalities in substituting or amending an existing regulation to confront an issue that the governmental unit deems it necessary to address.

*Have appellants succeeded in casting direct doubt on the county's evidence or factual findings that support the 2003 AUB ordinance?*

It is also necessary separately to examine the adequacy of the underlying evidence used by the county in justifying the 2003 AUB ordinance. In *Renton*, the Supreme Court noted that because the city did not have an AUB within its borders, it was not necessary for the city to conduct research into possible adverse secondary effects of an AUB. *Renton*, 475 U.S. at 51–52, 106 S.Ct. at 931. In *Alameda Books*, the Court deferred to the city because it was able to show support for its theory that a concentration of adult operations in one locale attracted crime. *Alameda Books*, 535 U.S. at 442, 122 S.Ct. at 1738. The Court noted that the correct inquiry to determine whether a municipal ordinance is designed to serve a substantial government interest without unreasonably limiting alternative avenues of communication was to ask "whether the municipality can demonstrate a connection between the speech regulated by the ordinance and the secondary effects that motivated the adoption of the ordinance." *Id.* at 441, 122 S.Ct. at 1737. Did Morrison County properly establish this connection between the speech regulated and the adverse secondary effect the county sought to reduce?

The county argues that the 2003 AUB ordinance is necessary to counter continued adverse secondary effects of AUBs in Morrison County. The county claims that adverse secondary effects of AUBs continued after the 1995 AUB ordinance was passed. Appellants' own evidence shows that crime has continued within the county and at the only other AUB in Morrison County.

Appellants note *Peek–A–Boo Lounge of Bradenton, Inc. v. Manatee County, Fla.*, 337 F.3d 1251 (11th Cir.2003), which provides an excellent example of what constitutes direct doubt and what may shift the evidentiary burden back to the governmental unit. Therein, the AUB cited incident rates showing lower crime near the AUB than near surrounding businesses, increases in property values near the AUB, civic awards given to the AUB for contributions to the community, and numerous health and safety inspection records. *Id.* at 1270–71.

 Appellants allege that the county relied on improper evidence in its determination that AUBs provided the impetus for adverse secondary effects. The county relied upon studies from throughout the United States which showed a correlation between AUBs and higher rates of crime, sexually transmitted diseases, and reduced property values. Appellants contend that this evidence is not relevant because Morrison County did not utilize any information regarding its own demographics during the crafting of the 2003 AUB ordinance.

The evidence relied upon by the county included, but is not limited to: a paragraph on a study regarding impacts on nearby properties in St. Paul, Minnesota, among other cities; the Report of the Attorney General's Working Group on the Regulation of Sexually Oriented Business, Hubert H. Humphrey, III, Attorney Gen-

eral (June 6, 1989), which provided research and guidance to municipalities about the regulation of sexually oriented businesses within Minnesota; and studies from Washington, Illinois, Texas, Virginia, and California that discuss the effects of sexually oriented businesses on local communities.

We understand appellants' argument that comparisons, even when dressed up, often come down to "apples versus oranges." However, district courts are allowed to weigh the credibility and determine the weight to be given the evidence that each party offers. The evidence proffered to support appellants' argument are studies and reports that simply reach a different conclusion than the studies relied on by the county.

This evidence was also used in another case cited by appellants, *Daytona Grand, Inc., v. City of Daytona Beach, Fla.*, 410 F.Supp.2d 1173, 1188 (M.D.Fla.2006) which held a county's alcohol and public nudity statute unconstitutional based on plaintiffs' expert testimony discrediting the county's anecdotal evidence and "highly unreliable data" and plaintiffs' own local studies showing no adverse secondary effects. The chart prepared by appellants appears to be a comparison with other establishments in the county that serve alcohol. Here, appellants failed to present any additional studies regarding adverse secondary effects or the lack thereof within Morrison County. As in *Alameda Books*, appellants present a plausible, but not compelling, argument that the studies Morrison County relied on have serious flaws that undercut the county's discretionary decision in passing the 2003 AUB ordinance. While studies that more closely correspond with the demographics of Morrison County might be helpful to the county in replacing or amending its pre-existing ordinance, caselaw indicates that studies or findings specific to Morrison County are not required.

*Did the 2003 AUB ordinance provide reasonable alternative avenues of communication?*

Appellants assert that because only approximately five percent of all land in Morrison County is, today, available for use by AUBs, the 2003 AUB ordinance fails to provide reasonable alternative avenues of communication. The county responds by arguing that 64 percent of all commercial property meets the criteria for AUB use set forth in the 2003 AUB ordinance.

*Renton* discusses this issue:

That respondents must fend for themselves in the real estate market, on an equal footing with other prospective purchasers and lessees, does not give rise to a First Amendment violation. And although we have cautioned against the enactment of zoning regulations that have "the effect of suppressing, or greatly restricting access to, lawful speech," *American Mini Theatres*, 427 U.S., at 71, n. 35, 96 S.Ct. at 2453 (plurality opinion), we have never suggested that the First Amendment compels the Government to ensure that adult theaters, or any other kinds of speech-related businesses for that matter, will be able to obtain sites at bargain prices. See *id.*, at 78, 96 S.Ct. at 2456 (POWELL, J., concurring) ("The inquiry for First Amendment purposes is not concerned with economic impact"). In our view, the First Amendment requires only that Renton refrain from effectively denying respondents a reasonable opportunity to open and operate an adult theater within the city, and the ordinance before us easily meets this requirement.

*Renton*, 475 U.S. at 54, 106 S.Ct. at 932.

Appellants make much of the small ratio of land available for use by an AUB under

the 2003 AUB ordinance to the total land in area of in Morrison County. However, there remain 354 acres, or 236 sites, in Morrison County that LFSP or any other AUB could pursue as a location for its business. The law requires at least some chance of an alternative source; it does not require that it be immediately available and cheap.

## DECISION

LFSP was not a legal nonconforming use at the time it opened its doors for business. Sewer and septic issues are recognized as an element of land-use planning. Appellants purposefully attempted to disregard the county's inherent authority to regulate land use and are not entitled to lawful-nonconforming-use status

The claims brought before this court were not chosen by appellants. Because the county initiated these claims and chose the issues on which it wanted to base its argument, we reject the county's objection to the judiciability of certain issues. The constitutionality of Morrison County's ordinance was put at issue by the county and is addressed, in favor of the county.

Whether a government unit is passing ordinances or amending them in the area of health, human services, police protection or public safety, municipal bodies are historically accorded wide latitude in the evidence they rely on in making a discretionary decision. Counties retain discretion to use studies from other sources to justify their actions.

The standard used to challenge the evidence offered by a municipal body remains the same. Appellants failed to raise direct doubt regarding the studies Morrison County relied on when making its determinations regarding the adverse secondary effects of AUBs.

There is commercial land in Morrison County fit for use by AUBs under the 2003 AUB ordinance. That the land may already be occupied does not change the analysis. AUBs are businesses subject to government restriction like any other. Morrison County *is not required* to find an actual location for use by an AUB; rather, the county must assure that there are locations at which an AUB could operate.

The Morrison County 2003 AUB ordinance satisfies all prongs of the constitutional tests.

**Affirmed.**