Lorraine **WHITE**, Trustee for the Lorraine M. White Trust, et al., Respondents,

v.

**CITY OF ELK RIVER**, Appellant.

No. A12–0681.

Court of Appeals of Minnesota.

Oct. 29, 2012.

James G. Robin, Gregory E. Woodford, Wayzata Law Group, LLC, Wayzata, MN, and Bryan R. Battina, Battina Law, PLLC, Minneapolis, MN, for respondents.

George C. Hoff, Shelley M. Ryan, Hoff, Barry & Kozar, P.A., Eden Prairie, MN, for appellant.

Susan L. Naughton, League of Minnesota Cities, St. Paul, MN, for amicus curiae.

Considered and decided by CHUTICH, Presiding Judge; HALBROOKS, Judge; and TOUSSAINT, Judge.*

## OPINION

CHUTICH, Judge.

In this land-use dispute, appellant City of Elk River challenges the district court's grant of summary judgment in favor of respondents Wapiti Park Campgrounds, Inc. and Lorraine White, Trustee for the Lorraine M. White Trust. The city contends that the district court erred in concluding that it could not revoke Wapiti Park's conditional-use permit after its campground became a nonconforming use, even though the campground violated certain conditions of the permit. Because we conclude that the city was entitled to terminate Wapiti Park's use of the property through revocation of the conditional-use permit, we reverse.

## FACTS

Wapiti Park Campgrounds (Wapiti Park), owned by the Lorraine White Trust, operates on approximately 52 acres of property located in Elk River. When Wapiti Park opened in 1973, no zoning ordinance governed use of the land. The first zoning requirement relevant to this appeal occurred in 1983, when the city made campgrounds a conditionally permitted use in the zoning district where Wapiti Park was located. In 1984, the city granted Wapiti Park a conditional-use permit with nine conditions, one of which prohibited permanent residents at the campground.

The city again amended its zoning ordinances in 1988, removing campgrounds as a conditionally permitted use in the zoning district in which Wapiti Park was located. Wapiti Park became a legal, nonconforming use, and the parties agree that the campground has held this designation since 1988.

When Wapiti Park opened, it contained one building used as an office, laundry, restaurant, and gathering place for campers. The building also contained showers

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

and other facilities required of campgrounds by the Minnesota Department of Health. The building was completely destroyed by fire in 1999. Wapiti Park sought to rebuild the building in 2000, but before issuing a building permit, the city required Wapiti Park to apply for an interim-use permit because the building was an accessory to the nonconforming campground.[1] The city granted the interim-use permit, with the condition that it was valid for 10 years, or the earlier of when the property is redeveloped or ownership transferred. Neither the planning commission nor the city council expressed any concerns regarding permanent residents at Wapiti Park when issuing the interim-use permit in 2000, but neither the interim-use permit nor the subsequently issued building permit altered the terms of the underlying conditional-use permit. After obtaining the building permit, Wapiti Park rebuilt its building.

The 2000 interim-use permit expired in 2010, and Wapiti Park applied for a new interim-use permit to continue use of the reconstructed building. The city reviewed the campground as part of this interim-use request "[b]ecause the structure is accessory to (subordinate and serving) the principle [sic] use" of the campground. After inspecting the campground, the city concluded that "a number of people use the campground as permanent housing, even through the winter months" and that several campsites included more "permanent" improvements, including "exterior insulation, exterior steps, sheds, [and] porches." Several vehicles also had other alterations suggesting they were not portable campers, including "rigid piping connecting the vehicle to the sanitary system" and window air conditioners. Testimony at the planning commission public hearing also suggested that a number of people make Wapiti Park their permanent, year-round home. The city found that this permanent use of the campground violated conditions in the 1984 conditional-use permit.

The city gave Wapiti Park several months to show compliance with the conditions of the 1984 conditional-use permit. When it failed to do so, the city council adopted a proposed resolution denying the interim-use permit and commencing proceedings to revoke the 1984 conditional-use permit. The city council held three public hearings on revocation of the conditional-use permit, and, in July 2011, ultimately passed a resolution conditionally revoking the permit. After the campground failed to comply with the conditions in the July 2011 resolution, the revocation of the 1984 conditional-use permit became effective on December 31, 2011.

Wapiti Park sued the city, seeking declaratory judgment on several grounds—in effect asking the district court to find that the campground was a legal, nonconforming use and that the city erroneously revoked its permits. Wapiti Park also brought a tort claim asserting that the city intentionally interfered with its business by causing many "longer term campers" not to renew their "rental contracts." The parties brought cross-motions for summary judgment, and the district court granted partial summary judgment for Wapiti Park. It found that the campground was a legal, nonconforming use, the city could not eliminate this use by revoking

---

1. Under the Elk River City Code at the time, an interim use was "the temporary use of a property until a particular date, until the occurrence of a particular event." Elk River, Minn., City Code § 900.43 (2000). The city council could authorize interim-use permits even for uses "not consistent with the land use designated on the adopted Land Use Plan" and for uses "that fail to comply with all of the zoning standards established for the district within which it is located." *Id.*

the 1984 conditional-use permit, and Wapiti Park was entitled to rebuild the building in 2000 without a permit from the city. The city now appeals.

## ISSUE

Can the city terminate Wapiti Park's nonconforming use by revoking the 1984 conditional-use permit?

## ANALYSIS

A grant of summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. On appeal from a grant of summary judgment, we "review the record to determine whether there is any genuine issue of material fact and whether the district court erred in its application of the law." *Dahlin v. Kroening*, 796 N.W.2d 503, 504 (Minn.2011). Where there are no disputed factual issues, we review legal determinations de novo to determine whether the district court erroneously applied the law. *SCI Minn. Funeral Servs., Inc. v. Washburn–McReavy Funeral Corp.*, 795 N.W.2d 855, 861 (Minn.2011). The city does not allege any genuine issues of material fact, and we conclude that none exist.[2]

■ Although municipalities have broad discretion to make zoning decisions, we may "reverse the municipality's decision if its reasons are legally insufficient or if the decision is without factual basis." *Cnty. of Morrison v. Wheeler*, 722 N.W.2d 329, 334 (Minn.App.2006) (quotation omitted), *review denied* (Minn. Dec. 20, 2006); *see also Lam v. City of St. Paul*, 714 N.W.2d 740, 743 (Minn.App.2006) ("We reverse a decision of a city council only if it is fraudulent, arbitrary, unreasonable, unsupported by substantial evidence, not within its jurisdiction, or based on an error of law." (quotation omitted)). The city contends that the district court erred in concluding that it could not eliminate the nonconforming use by revoking the 1984 conditional-use permit.

■ To address the issue of whether the 1984 conditional-use permit was still in effect after Wapiti Park's use became nonconforming, and whether the city has the authority to revoke the permit, we must construe Minn.Stat. § 462.357, subd. 1e(a), which governs nonconforming uses of property. With exceptions not relevant here, the statute provides in pertinent part:

> Except as otherwise provided by law, any nonconformity, including the *lawful* use or occupation of land or premises existing at the time of the adoption of an additional control under this chapter, may be continued, including through repair, replacement, restoration, mainte-

---

**2.** In addition, the record shows that Wapiti Park failed to make more than general assertions that it did not violate the 1984 conditional-use permit. Because this record shows that, among other things, residents of the campground testified to the planning commission that the campground was their permanent, year-round home, we cannot say, even when viewing the record in the light most favorable to Wapiti Park, that it created a genuine issue of material fact regarding whether it violated the 1984 conditional-use permit. *See Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 364 (Minn.2009) (stating that "to raise a genuine issue of material fact the nonmoving party must present more than evidence 'which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions'") (quoting *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997)).

nance, or improvement, but not including expansion....

(Emphasis added.) "It is a fundamental principle of the law of real property that uses lawfully existing at the time of an adverse zoning change may continue to exist until they are removed or otherwise discontinued." *Hooper v. City of St. Paul*, 353 N.W.2d 138, 140 (Minn.1984).

The city contends that because, in 2010, Wapiti Park was no longer in compliance with the 1984 permit conditions, the use was no longer "lawful" under section 462.357, subdivision 1e(a), and, therefore, Wapiti Park was not allowed to continue the nonconforming use. We agree for the following reasons.

The construction of statutes is a question of law that this court reviews de novo. *Lee v. Lee*, 775 N.W.2d 631, 637 (Minn. 2009). If the statute's language is clear, and not ambiguous, we construe it according to its plain meaning. *Krummenacher v. City of Minnetonka*, 783 N.W.2d 721, 726 (Minn.2010). Our goal when construing statutory provisions is to "ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2010). "We construe statutes to effect their essential purpose but will not disregard a statute's clear language to pursue the spirit of the law." *Lee v. Fresenius Med. Care, Inc.*, 741 N.W.2d 117, 123 (Minn.2007).

Applying these principles, we conclude that section 462.357, subdivision 1e(a), is not ambiguous. The language of the statute provides that, to be a protected nonconforming use, the use must have been "lawful" at the time it became nonconforming. At the time of the 1988 amendment to the zoning ordinance, Wapiti Park's use of the property as a campground was only lawful because of the 1984 conditional-use permit. The plain language thus implies that Wapiti Park was only entitled to the protections of section 462.357, subdivision

1e, if it remained in compliance with the permit that made it a lawful use in the first place.

■ Further, we conclude that Wapiti Park's conditional-use permit was still in effect because it had never been revoked or otherwise terminated. A conditional-use permit does not cease to exist when the use becomes nonconforming. Rather, the nonconforming use is then defined by the conditions contained in the conditional-use permit, and any use outside of the permit parameters may be an unlawful expansion of the nonconforming use. Conditional-use permits are perpetual, and "shall remain in effect as long as the conditions agreed upon are observed." Minn. Stat. § 462.3595, subd. 3 (2010); *see also Upper Minnetonka Yacht Club v. City of Shorewood*, 770 N.W.2d 184, 187 (Minn. App.2009) (stating that a conditional-use permit is "perpetual in nature" and remains in effect as long as the permit's conditions are observed); *Dege v. City of Maplewood*, 416 N.W.2d 854, 856 (Minn. App.1987) (stating that a conditional-use permit "remains in effect until its provisions are violated").

This court's decision in *Lam v. City of St. Paul* supports our conclusion. In *Lam*, the city granted the property owners a conditional-use permit in 1994 to operate an auto-repair business, but only in conjunction with used-vehicle sales. 714 N.W.2d at 741. The city re-zoned the property in 2003 to prohibit all automobile sales and repair. *Id.* at 742. At the time of the re-zoning, the successor property owner was operating a general auto-repair business without the associated used-vehicle sales, in violation of the 1994 permit, although the city took no action regarding the noncompliance. *Id.* at 741–42. The relators in the appeal had purchased the property in 2005 and sought to operate an auto-repair business. *Id.* at 742.

This court concluded that even though the property had not been used for auto sales either as of the date of the 2003 amendment or for one year immediately after (as required by the St. Paul code), auto repair as an accessory to used-vehicle sales was still allowed because "a permitted use exists independently of how the land is actually used." *Id.* at 744. The court stated:

> The use of the land for auto repair as an accessory to auto sales became a nonconforming use when the 2003 zoning amendment took effect because even though no such business was then being conducted, *that use existed by virtue of the [conditional use permit] as a lawful use prior to the amendment of the zoning code.*

*Id.* (emphasis added). Further, the court found that because the city code did not "provide for any automatic revocation, amendment, or expiration" of the conditional-use permit, the permit was still in place and "the uses permitted by the conditional use permit ... continue to exist." *Id.* at 744–45.

The *Lam* court thus accepted that a conditional-use permit does not cease to exist merely because the use later becomes nonconforming. Rather, the conditionally permitted use is still allowed, so long as the property continues to comply with the original permit conditions. We draw the same conclusion in this case: Wapiti Park was still entitled to operate as a campground after it became a nonconforming use, but only if it remained in compliance with the conditions in the 1984 conditional-use permit.

This construction comports with the legislative purpose behind municipal planning statutes. The purpose of such statutes is to help municipalities to "insure a safer, more pleasant and more economical environment for residential, commer-cial, industrial and public activities, to preserve agricultural and other open lands, and to promote the public health, safety, and general welfare." Minn.Stat. § 462.351 (2010). In issuing the 1984 conditional-use permit to Wapiti Park, the city presumably considered these objectives and concluded that the included conditions furthered the goal of promoting public health, safety, and welfare. *See* Elk River, Minn., City Code § 900.42(4) (1984) (setting forth standards for issuance of a conditional-use permit, including that the use "[w]ill not endanger, injure or detrimentally affect ... the public health, safety, morals, comfort, convenience or general welfare").

It would be anomalous to conclude that merely because the city exercises its broad discretion to amend a zoning ordinance, converting what was a conditionally permitted use into a nonconforming use, it loses the authority to enforce the conditions that it deemed necessary to promote public health, safety, and welfare when it first issued the permit. This result is especially troubling when the city determines, as it implicitly did here with the 1988 zoning amendment, that allowing campgrounds in the zoning district, even as a conditionally permitted use, was counter to public health, safety, and welfare interests. Further, prohibiting cities from enforcing existing conditional-use permits after a use becomes nonconforming would inhibit them from amending their comprehensive land-use plans, even if an amendment is in the public interest. *See* Minn. Stat. § 645.17 (2010) ("[T]he legislature intends to favor the public interest as against any private interest.").

We thus conclude that the 1984 conditional-use permit was still in effect even after the campground became nonconforming, and the city properly revoked the permit when it determined that the camp-

ground was no longer in compliance with the permit conditions. *See* Elk River, Minn., City Code § 30–659(a) (2010) ("[F]ailure to comply with the conditions set forth in the approval of a conditional use permit may result in revocation of the permit by the city."); *NBZ Enters., Inc. v. City of Shakopee*, 489 N.W.2d 531, 537 (Minn.App.1992) (recognizing that a city may revoke a conditional-use permit if it determines that the property owner has violated the permit conditions), *review denied* (Minn. Sept. 30, 1992). Because we conclude that the city properly terminated the nonconforming use of the property as a campground by revoking the 1984 conditional-use permit, Wapiti Park's remaining claims, including those concerning the 2000 interim-use permit for the building—an accessory to the nonconforming campground—are moot.

### DECISION

The 1984 conditional-use permit did not expire or terminate when Wapiti Park became a nonconforming use in 1988. Rather, the permit remained in effect, and the campground's nonconforming use of the property was only lawful so long as it complied with the permit conditions. Further, the city was entitled to revoke the 1984 conditional-use permit, and thereby terminate use of the property as a campground, when Wapiti Park continued to violate the conditions of the 1984 conditional-use permit. We therefore reverse the grant of summary judgment for Wapiti Park, and hold that the city is entitled to summary judgment on all of the campground's claims.

**Reversed.**