CHARLES HAWKINS AND OTHERS v. PAUL TALBOT.

80 N. W. (2d) 863.

February 1, 1957—No. 36,962.

*Anderson & Poseley* and *James T. Knutson,* for appellants.
*Edward E. Coleman,* for respondent.

DELL, CHIEF JUDGE.

Plaintiffs seek to permanently enjoin the operation of a gravel pit located in the village of Coon Rapids on the ground that it is being operated in violation of a village ordinance, and on the further basis that it constitutes a nuisance. The matter was tried by the court without a jury. Plaintiffs appeal from a judgment for the defendant.

The evidence and the unchallenged findings of fact indicate that the plaintiffs[1] owned and occupied certain dwellings along the Mississippi River. The defendant, Paul Talbot, and his predecessors, who shall hereafter be referred to collectively as the defendants,[2] owned the land directly across a public highway from the plaintiffs. For many years the defendants used their land for agricultural purposes. Beginning in 1940, they commenced removing sand and gravel from a portion of their property and continued such removal intermittently until the issuance of the restraining order in this action. The remainder of the land apparently continued to be used to grow feed for dairy cattle. On July 1, 1953, the Coon Rapids Village Council passed an ordinance zoning the defendants' property

[1]Plaintiffs Walter R. Cebula and Leonora M. Cebula, having disposed of their property in this area, dismissed and withdrew from the case at the time of the hearing.

[2]The plaintiffs dismissed the action as to Paul Talbot, as administrator of the estate of Ralph J. Talbot, leaving Paul Talbot as the sole defendant.

as "residential." However, this ordinance also provided as follows (Coon Rapids Ordinance No. 17, § 2.46):

"Non-Conforming Use

"Except as otherwise provided in this section the lawful use of any land or building existing at the time of taking effect of the ordinance may be continued although such use does not conform to the regulations provided by this ordinance for the district in which such land or building is located, provided, however, that no such non-conforming use of the land shall be enlarged or increased nor shall such non-conforming use be extended to occupy a greater area of land than that occupied by such use at the time of the adoption of this ordinance; nor shall any such non-conforming use be moved to any other part or parcel of land upon which the same is conducted at the time of the adoption of this ordinance."

In July 1953 the size of the gravel pit was 175 feet by 150 feet by 6 feet deep. In October 1954 the dimensions were 175 by 150 by 7 feet. As of the date of trial, in September 1955, the pit was 240 by 210 by 8½ feet. Until August 1955 the removal operations had been accomplished by a power shovel and, in one instance, a rock screen was also used. After this date the defendant began using a rock crusher as a part of the removal operation which screened and crushed the rock and sand to meet certain specifications.

Plaintiffs first contend that the enlargement of the gravel pit and the use of the rock crusher constituted an extension of a "non-conforming use" in violation of the zoning ordinance. Zoning ordinances have long been upheld as legitimate exercises of the police power as long as they conform to the usual limitations governing the exercise of that power.[3] One limitation traditionally imposed on the right of a governmental body to enact zoning restrictions is that such restrictions must be subject to the vested property interests of lawful businesses and uses already established within the zoned district.[4] Where these nonconforming uses are specifically

[3]See, e. g., State ex rel. Beery v. Houghton, 164 Minn. 146, 204 N. W. 569, 54 A. L. R. 1012, affirmed, 273 U. S. 671, 47 S. Ct. 474, 71 L. ed. 832.

[4]See, 1 Yokley, Zoning Law and Practice (2 ed.) § 50.

exempted, the question of the right of the owner to extend or enlarge such use has been the subject of considerable litigation.[5] It is not uncommon for the zoning ordinance to provide, as here, that there shall be no enlargement of the nonconforming use. These restrictions have generally been upheld.[6]

Cases testing restrictions prohibiting extension of nonconforming uses have usually involved the size of buildings or other improvements and, therefore, even though the restrictions were upheld, the owner could indefinitely continue his business with the existing facilities. However, in the instant case we are confronted with a diminishing asset. If the defendant is to be limited to the area of land actually excavated at the time of the adoption of the ordinance, the restriction, in effect, prohibits *any* further use of the land as a gravel pit. Nevertheless, some courts have apparently adopted this view. For example, in Town of Billerica v. Quinn, 320 Mass. 687, 688, 71 N. E. (2d) 235, 236, the court said:

"It is plain that the Legislature intended that existing uses should be preserved. It is equally plain that under the statute and the by-law they are not to be extended. The difficulty comes in reconciling these propositions where the use consists in stripping loam for sale, and where no more loam can be stripped without extending the denuded area beyond its existing boundaries. Nothing in the statute or by-law indicates a legislative intent to subordinate the zoning principle in favor of existing uses of such a character that they cannot be continued without extending them. The exception in favor of an existing use is expressly limited by the statutory words 'to the extent to which it is used at the time of adoption of the ordinance or by-law.' A use which cannot be so limited is not within the exception and is not preserved at all. This is, in effect, what the statute says." (Citing case.)[7]

[5]See, Annotation, 147 A. L. R. 167.

[6]See, e. g., Town of Burlington v. Dunn, 318 Mass. 216, 61 N. E. (2d) 243, 168 A. L. R. 1181; 1 Yokley, Zoning Law and Practice (2 ed.) § 153.

[7]See, also, People ex rel. Ventres v. Walsh, 121 Misc. 494, 201 N. Y. S. 226.

Even assuming that such a construction is not violative of constitutional protections of vested property rights, it is unwarranted under the language of the ordinance here involved. We are of the opinion that the phrase "occupy a greater area of land than that occupied by such use at the time of the adoption of this ordinance" should be interpreted, in the case of a diminishing asset, to mean all of that part of the owner's land which contains the particular asset, and not merely that area in which operations were actually being conducted at the time of the adoption of the ordinance. In other words, since the gravel here "occupied" a larger area than the part actually being mined at the time of the adoption of the ordinance, the entire area of the gravel bed could be used without constituting an unlawful extension of a nonconforming use.

A number of courts have adopted this view. For example, in Lamb v. A. D. McKee, Inc. 10 N. J. Misc. 649, 651, 160 A. 563, 564, the court said:

"* * * We think the tract as a whole was used for excavating purposes even though only a part of it was actually being dug. Under prosecutor's reasoning a land owner would be entitled to continue a previous non-conforming use only on the precise spot where it was being done. We think that is not so, and was not the intention of the legislature in enacting section 11 of the act of 1928. We think that the tract was a single unit and that it was put to a nonconforming use as a whole before the act of 1928 was passed."[8]

We conclude, therefore, that, since the defendants confined their excavations within the area occupied by the gravel bed, they did not violate the ordinance merely by enlarging the size of the gravel pit.

Nor is there any merit to the plaintiffs' contention that the employment of a rock crusher was an extension of a nonconforming use. As pointed out in DeFelice v. Zoning Board of Appeals, 130 Conn. 156, 162, 32 A. (2d) 635, 638, 147 A. L. R. 161, 165:

[8]See, also, DeFelice v. Zoning Board of Appeals, 130 Conn. 156, 32 A. (2d) 635, 147 A. L. R. 161; Cheswick Borough v. Bechman, 352 Pa. 79, 42 A. (2d) 60.

"* * * the fact that improved and more efficient instrumentalities are utilized in pursuit of the use does not exclude it from the category of an 'existing use,' provided these are ordinarily and reasonably adapted to make that use available to the owner, and the original nature and purpose of the undertaking remain unchanged." (Citing cases.) [9]

That case involved a wet sand classifier, which was 106 feet long, 85 feet wide for a part of the distance, and 40 feet high, with a floor area of 2,000 square feet, made mostly of steel, and required several concrete footings and a body of water sufficient to sustain a float 15 feet long by 10 feet wide with Diesel suction dredge machinery in order to successfully operate it. It not only excavated and screened the sand but washed and assorted it according to size, and it would eventually convert the sand pit into a permanent deep pond or lake covering its entire acreage. The court found that the addition of this classifier was a departure from the original nature and purpose of the use. In the instant case the utilization of the rock crusher was merely an improvement over the previous method and did not constitute a change in the nature and purpose of the original use. Consequently, its addition cannot be said to be an extension of the nonconforming use.

■ Plaintiffs also contend that, because the defendant, Paul Talbot, acquired the land in question after the adoption of the ordinance, his subsequent use of the gravel pit was unauthorized. A mere change in the ownership of land does not, in itself, constitute an extension of a nonconforming use. [10] It is clear that, for the purpose of applying the ordinance in question, the defendant, Paul Talbot, stands in the place of his predecessors.

■ Finally, plaintiffs argue that the defendants' gravel pit operation constitutes a nuisance under the provisions of M. S. A. 561.01. [11]

_____

[9] See, also, Haller Baking Company's Appeal, 295 Pa. 257, 261, 145 A. 77, 79; Cheswick Borough v. Bechman, 352 Pa. 79, 42 A. (2d) 60.

[10] See, Annotation, 9 A. L. R. (2d) 1039.

[11] M. S. A. 561.01 provides:

"Anything which is injurious to health, or indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with

As we said in Robinson v. Westman, 224 Minn. 105, 112, 29 N. W. (2d) 1, 6, 177 A. L. R. 746:

"It has frequently been held that a legitimate business located in a residential neighborhood and operated so as to pollute or contaminate the air through noxious odors created by it, or which, because of noises emanating from it, disturbs the peace and quiet of the neighborhood, or which in other ways endangers the safety and security of its residents or unreasonably interferes with their property rights, is a nuisance in fact, against which will lie injunctive relief. [Citing cases.] Likewise, if a legitimate business is conducted in such a way as to interfere with the rights of others in the use of the public highway, the same may be regarded as a nuisance subject to abatement. [Citing case.]"[12]

The plaintiffs' evidence shows that there was some dust and noise attributable to the operation of the gravel pit; that property values may have been decreased thereby; and that the pit constituted some danger to children in the community. The defendant's evidence, on the other hand, shows that the noise was not particularly bothersome and that the dust was not measurably increased. It also appears that the operation was carried on during daylight hours.

Since the evidence is conflicting and is sufficient to support a finding either way, the determination of the trial court that the defendants' operation did not constitute a nuisance cannot be disturbed on appeal.

The conclusions reached herein make it unnecessary to discuss the other points raised by the parties. The judgment of the trial court must be affirmed.

Affirmed.

---

the comfortable enjoyment of life or property, is a nuisance. An action may be brought by any person whose property is injuriously affected or whose personal enjoyment is lessened by the nuisance, and by the judgment the nuisance may be enjoined or abated, as well as damages recovered."

[12]See, also, Brede v. Minnesota Crushed Stone Co. 143 Minn. 374, 173 N. W. 805, 6 A. L. R. 1092.