Kevin WILLIAMS, et al., Appellants,

v.

The NATIONAL FOOTBALL LEAGUE, Respondent.

No. A10–922.

Court of Appeals of Minnesota.

Feb. 8, 2011.

Steven E. Rau, Flynn & Gaskins, PLLP, Minneapolis, MN; and Peter R. Ginsberg (pro hac vice), Ginsberg & Burgos PLLC, New York, NY, for appellants.

Peter D. Gray, Nilan Johnson Lewis P.A., Minneapolis, MN; and Daniel L. Nash (pro hac vice), Akin Gump Strauss

Hauer & Feld LLP, Washington, D.C., for respondent.

Considered and decided by HALBROOKS, Presiding Judge; KLAPHAKE, Judge; and CONNOLLY, Judge.

## OPINION

CONNOLLY, Judge.

This is an appeal from the district court's denial of permanent injunctive relief following a court trial of appellants' claims under the Drug and Alcohol Testing in the Workplace Act (DATWA), Minn. Stat. §§ 181.950–.957 (2010). Because we conclude that DATWA did not govern the confirmatory drug tests on which appellants' claims are based, we affirm.

## FACTS

Appellants Kevin Williams and Pat Williams are professional football players contracted to play for the Minnesota Vikings. Respondent, the National Football League (NFL), is "an unincorporated association of member clubs[,]" including the Minnesota Vikings, "which own and operate professional football teams." *Williams v. NFL*, 582 F.3d 863, 868 (8th Cir.2009). This case comes before us following a lengthy procedural history, having twice been removed to and remanded from federal court.

The central dispute is whether DATWA precludes the NFL from disciplining appellants for violations of the collectively bargained NFL Policy on Anabolic Steroids and Related Substances (the policy). The policy prohibits the use of both anabolic steroids and substances that can be used to mask the presence of steroids in the players' systems. Bumetanide, a diuretic, is specifically identified as a masking agent included within the prohibited substances under the policy.

In July 2008, as part of their annual mandatory physicals, appellants participated in drug testing by giving urine samples. Pursuant to the policy, upon arrival at the laboratory, each of the samples was divided into two separate specimens: an A bottle and a B bottle. Then, the lab conducted three separate tests. First, the lab conducted initial, screening tests on the A-bottle specimens. These screening tests were designed to detect the presence of any substance banned by the policy, including anabolic steroids and bumetanide. When the screening tests came back positive for bumetanide, the lab conducted confirmatory tests on the A-bottle specimens. After notifying the players that their urine had tested positive for bumetanide and that they could request the presence of an independent toxicologist to observe second confirmatory tests, the lab conducted confirmatory tests on the B-bottle specimens, which also proved positive for bumetanide. In contrast to the broad scope of the initial screening tests, both the A-bottle and B-bottle confirmatory tests were targeted solely to corroborating the presence of bumetanide in appellants' urine specimens.

Upon receipt of the B-bottle confirmatory tests results, the NFL notified appellants that, consistent with the policy, they would be suspended for four regular-season games and subject to "reasonable cause" testing for the remainder of their NFL careers. Appellants challenged the discipline decisions, which were upheld by an NFL executive vice president, sitting as an arbitrator, in December 2008.

The day after the decision upholding the suspensions, appellants filed suit in state district court, and the district court granted a temporary restraining order enjoining the NFL from enforcing the suspensions. Over the next two years, the case was litigated in state and federal court. The

federal district court dismissed most, but not all, of appellants' claims on grounds of preemption under the Labor Management Relations Act. *Nat'l Football League Players Ass'n v. Nat'l Football League*, 654 F.Supp.2d 960, 967 (D.Minn.2009), *aff'd*, *Williams v. Nat'l Football League*, 582 F.3d 863 (8th Cir.2009), *cert. denied*, —— U.S. ——, 131 S.Ct. 566, 178 L.Ed.2d 413 (Nov. 8, 2010).[1] On summary judgment following remand, the state district court dismissed appellants' claims under the Lawful Consumable Products Act, Minn. Stat. § 181.938 (2010), and rejected many of the DATWA violations alleged by appellants. The court determined that the NFL did not notify appellants of their positive confirmatory test results within three days, as an employer is required to do under DATWA, but found genuine issues of material fact with respect to whether the NFL is appellants' employer under DATWA. The court also found genuine issues of material fact with respect to whether the NFL, assuming it is appellants' employer, violated the confidentiality requirements of DATWA. In March 2010, appellants tried the DATWA claim to the district court.

On May 6, 2010, the district court issued its Findings of Fact, Conclusions of Law and Order for Judgment in a detailed 27-page opinion. Therein, the district court found that the NFL was a joint employer of appellants and thus was subject to and had violated the notice requirements of DATWA. But the district court found insufficient evidence to prove that the NFL violated the confidentiality provisions of DATWA. And, because appellants could not show that they were injured by the proved DATWA violation, the district court ordered the temporary injunction

dissolved and declined to enter permanent injunctive relief or award damages.

Appellants moved to stay dissolution of the temporary injunction. The district court found their motion premature because no appeal had yet been filed, but indicated that it would grant the stay once appellants did perfect an appeal. Appellants filed an appeal from the order denying permanent injunctive relief. Following that appeal, judgment was entered, and appellants did not timely appeal from the judgment. The NFL moved to dismiss, arguing that the failure to appeal from the judgment mooted this appeal. This court disagreed, but noted that the scope of review on appeal from the injunction order alone may be limited and "defer[ed] to the panel assigned to this case the determination of the appropriate scope of review in this appeal."

## ISSUE

Did the district court err by denying appellants' request for permanent injunctive relief?

## ANALYSIS

 As a threshold matter, we must determine the appropriate scope of review on appeal from the denial of a permanent injunction when appeal is not also taken from final judgment. Through their briefing, appellants challenge not only the district court's failure to grant permanent injunctive relief, but also the failure to award damages and attorney fees. While neither this court nor the Minnesota Supreme Court has addressed the issue, the federal courts have held that, on appeal from a permanent injunction, the scope of review is limited and encompasses the merits of the underlying claims only to the

---

1. The Eighth Circuit specifically held that any claims under DATWA were not preempted.

582 F.3d at 878.

extent necessary to review challenges to the injunction. *See, e.g., Randolph v. Rodgers,* 170 F.3d 850, 855–56 (8th Cir. 1999) (explaining that, on appeal from permanent injunctive relief, court "may review other issues only if they are inextricably bound up with the injunction"). Adopting this standard here, we decline to review the damages and attorney-fee issues. *See id.* at 856 (declining to review issues regarding monetary damages in appeal from permanent injunction order); *see also Sheeran v. Sheeran,* 481 N.W.2d 578, 579 (Minn.App.1992) (explaining that challenge to damages award is properly made on appeal from judgment).

"This court reviews orders granting permanent injunctions under an abuse-of-discretion standard." *Jackel v. Brower,* 668 N.W.2d 685, 688 (Minn.App.2003), *review denied* (Minn. Nov. 25, 2003). The "court will not set aside a district court's findings regarding entitlement to injunctive relief unless they are clearly erroneous." *Citizens for a Safe Grant v. Lone Oak Sportsmen's Club, Inc.,* 624 N.W.2d 796, 807 (Minn.App.2001); *see also* Minn. R. Civ. P. 52.01 (providing that findings of fact shall not be set aside unless clearly erroneous). But when the district court grants an injunction based on its interpretation of a statute, our review of that issue is de novo. *See, e.g., Edina Educ. Ass'n v. Bd. of Educ. of Indep. Sch. Dist. No. 273,* 562 N.W.2d 306, 311 (Minn.App.1997) (reviewing de novo injunction based on interpretation of data practices act), *review denied* (Minn. June 11, 1997).

■ Appellants assert that the district court erred by finding a violation of DATWA but nevertheless denying permanent injunctive relief, arguing that DATWA mandates injunctive relief for any violation. The NFL· disputes this characterization of the statute, but also asserts that this court can affirm on any of several alternative grounds, including DATWA's inapplicability to the confirmatory tests from which appellants' claims arise. Appellate courts are free to affirm for reasons other than those on which a decision is based. *See, e.g., Indep. Sch. Dist. No. 404 v. Castor,* 670 N.W.2d 758, 764 (Minn. App.2003) (affirming district court on other grounds). Thus, we address first the scope of the statute.

"The touchstone for statutory interpretation is the plain meaning of a statute's language." *ILHC of Eagan, LLC v. Cnty. of Dakota,* 693 N.W.2d 412, 419 (Minn. 2005). "Where the legislature's intent is clearly discernable from plain and unambiguous language, statutory construction is neither necessary nor permitted and we apply the statute's plain meaning." *Hans Hagen Homes, Inc. v. City of Minnetrista,* 728 N.W.2d 536, 539 (Minn.2007); *see also* Minn.Stat. § 645.16 (2010) (directing that, when the language of a statute is "clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit").

DATWA places limitations on an employer's ability to require employees to undergo "drug and alcohol testing." *See* Minn.Stat. § 181.951, subd. 1(a) (providing that "[a]n employer may not request or require an employee or job applicant to undergo drug and alcohol testing except as authorized in this section"). "Drug and alcohol testing" is defined as "analysis of a body component sample ... *for the purpose* of measuring the presence or absence of *drugs,* alcohol, or their metabolites in the sample tested." Minn.Stat. § 181.950, subd. 5 (emphasis added).

■ DATWA defines an "employee" as a "person ... who performs services for compensation, in whatever form, for an employer." *Id.,* subd. 6. An "employer," in turn, is "a person or entity located or doing business in this state and having one

or more employees." *Id.,* subd. 7. The district court found that the NFL and the Minnesota Vikings jointly employ appellants. The district court's findings in this regard are not clearly erroneous, and we agree that the NFL is an employer, and appellants its employees, within the meaning of DATWA.

■ DATWA defines "drug" to mean "a controlled substance as defined in section 152.01, subdivision 4." *Id.,* subd. 4. Section 152.01, subd. 4, in turn defines "controlled substance" to mean "a drug, substance, or immediate precursor in Schedules I through V of section 152.02. The term shall not include distilled spirits, wine, malt beverages, intoxicating liquors or tobacco." Minn.Stat. § 152.01, subd. 4 (2010). Bumetanide is not identified in any of the controlled-substance schedules of section 152.02.

■ Both appellants and the district court cite section 152.01, subdivision 2, which provides that "[t]he term 'drug' includes all medicines and preparations recognized in the United States Pharmacopoeia or National Formulary and any substance or mixture of substances intended to be used for the cure, mitigation, or prevention of disease of either humans or other animals." *Id.,* subd. 2 (2010). But DATWA specifically defines "drug" with reference to the controlled-substance definition of section 152.01, subdivision 4, and not the drug definition of section 152.01, subdivision 2. Thus, whether bumetanide meets the broader definition of drug in section 152.01, subdivision 2, is irrelevant because we are bound to apply the precise statutory definition chosen by the legislature in interpreting the statute. *Beardsley v. Garcia,* 753 N.W.2d 735, 737 (Minn.2008) ("When the language of a statute is plain and unambiguous, it is assumed to manifest legislative intent and must be given effect." (quotation omitted)).

All of the limitations and prohibitions in DATWA are tied to the terms "drug" and/or "drug and alcohol testing." Thus, for instance, the notice requirements, of which the district court found a violation, require an employer to notify an employee within three days of receipt of a "positive test result," which is defined as "a finding of the presence of *drugs,* alcohol, or their metabolites in the sample tested in levels at or above the threshold detection levels. . . ." Minn.Stat. § 181.950, subd. 10 (emphasis added). Similarly, the confidentiality provisions provide that: "[t]est result reports and other information acquired in the *drug or alcohol testing* process . . . may not be disclosed by an employer or laboratory to another employer or to a third-party individual, governmental agency, or private organization without the written consent of the employee or job applicant tested." Minn.Stat. § 181.954, subd. 2 (emphasis added).

The district court found that the NFL violated the notice provisions of DATWA by failing to notify appellants of their *positive confirmatory* test results. *See* Minn. Stat. § 181.953, subds. 3 (requiring lab to disclose positive result on confirmatory test within three working days), 7 (requiring employer to disclose positive result on confirmatory test within three working days of receipt). But, because the confirmatory A- and B-bottle tests in this case were targeted solely to detecting the presence of bumetanide, we conclude that they were not governed by DATWA. On summary judgment, the district court considered and rejected the argument that DATWA did not apply to these tests, adopting appellants' assertion that DATWA is not an "outcome determinative" statute. Our analysis, however, does not depend on the outcome of the confirmatory tests but

rather on their purpose, which is consistent with DATWA's definition of "drug and alcohol testing."

Because DATWA did not govern the confirmatory tests from which appellants' claims arise, there was no basis for the district court to find a violation of the notice requirements of DATWA or to grant permanent injunctive relief.[2] Accordingly, although we do not agree with the district court's interpretation of DATWA, we nevertheless affirm its order denying injunctive relief.

Importantly, our holding is limited to the specific facts of this case and should not be read to excuse the NFL from complying with DATWA when applicable. For example, had appellants' initial, screening tests been positive for anabolic steroids, subsequent confirmatory tests would be subject to DATWA's requirements because anabolic steroids are a Schedule III controlled substance. Minn.Stat. § 152.02, subd. 4(6).[3]

Finally, because our determination that DATWA does not apply to the confirmatory bumetanide testing is dispositive of this appeal, we do not reach appellants' assertion that injunctive relief is mandatory upon a finding of any violation of DATWA. Nor do we address the NFL's remaining alternative bases for affirming the district court's order.

## DECISION

Because bumetanide is not a drug within the meaning of DATWA, the statute does not apply to require notice of test results confirming the presence of bumetanide, and there was no basis on which the district court could grant permanent injunctive relief to appellants. Accordingly, we affirm.

**Affirmed.**

2. Appellants' claim that the NFL violated confidentiality provisions of DATWA is subject to this same analysis, but we also conclude that the district court did not clearly err in finding the evidence insufficient to support a finding that the NFL violated those provisions.

 For the first time at trial, appellant asserted that the NFL violated DATWA by failing to timely disclose to them that the initial screening tests were negative for anabolic steroids. But the district court did not address this issue, and we will not address it for the first time on appeal. See Thiele v. Stich, 425 N.W.2d 580, 582 (Minn.1988) (declining to address issues not raised to and addressed by

district court). Nor are we persuaded by appellants' argument that the district court erred by failing to address this or other belatedly asserted violations. See, e.g., Ericksen v. Wilson, 266 Minn. 401, 404, 123 N.W.2d 687, 689 (1963) (holding that district court did not err by denying posttrial motion to amend complaint to state new theory of liability).

3. We are emphatic on this point because, despite repeated, direct questioning at oral argument, counsel for the NFL would not acknowledge that the NFL is bound by DATWA.