Lorraine WHITE, Trustee for the Lorraine M. White Trust, et al., Appellants,

v.

CITY OF ELK RIVER, Respondent.

No. A12–0681.

Supreme Court of Minnesota.

Dec. 4, 2013.

---

Katherine L. MacKinnon, Sarah J. Demers, Law Office of Katherine L. MacKinnon, PLLC, Saint Louis Park, Minnesota; and James G. Robin, Wayzata Law Group, LLC, Wayzata, Minnesota, for appellants.

George C. Hoff, Shelley M. Ryan, Hoff, Barry & Kozar, P.A., Eden Prairie, Minnesota, for respondent.

Jarod M. Bona, Ann A. Parmley, DLA Piper, LLP, Minneapolis, Minnesota; and Luke A. Wake, National Federation of Independent Business Small Business Legal Center, Washington, D.C., for amici curiae National Federation of Independent Business Small Business Legal Center and Minnesota Vacation Rental Association.

Susan L. Naughton, League of Minnesota Cities, Saint Paul, Minnesota, for amicus curiae League of Minnesota Cities.

## OPINION

WRIGHT, Justice.

In this zoning dispute, appellant Wapiti Park Campgrounds, Inc., owned by appellant Lorraine White, Trustee for the Lorraine M. White Trust, operates a campground on land in respondent City of Elk River. After Wapiti Park began operating the campground, the City enacted a series of zoning ordinances regulating use of the land—first rendering campgrounds a non-permitted use, then allowing campgrounds as a conditional use subject to a conditional-use permit, and finally removing campgrounds as either a conditional or permitted use. While campgrounds were allowed as a conditional use, Wapiti Park obtained a conditional-use permit from the City. When Wapiti Park later violated the conditions of the conditional-use permit, the City revoked the permit and asserted that Wapiti Park was no longer authorized to operate the campground. Wapiti Park sued the City. Ruling on cross-motions for summary judgment, the district court concluded that Wapiti Park's operation of the campground was a nonconforming use that could not be terminated by revocation of the conditional-use permit. The court of appeals reversed. We subsequently granted review to address two issues: a municipality's authority to terminate a nonconforming use of land by revoking a conditional-use permit, and a municipality's authority to require an interim-use permit before approving replacement of a destroyed accessory building and resumption of the regulated use. For the reasons that follow, we reverse and remand.

I.

Wapiti Park operates a campground on approximately 52 acres of land in the City of Elk River. When Wapiti Park opened the campground in 1973, no zoning ordinance regulated use of the land. In 1980, the City enacted a zoning ordinance that rendered campgrounds a non-permitted use in the district where Wapiti Park was located. Wapiti Park did not conform to the new zoning ordinance. Rather, its lawful use of the land as a campground before the City enacted the ordinance allowed it to continue operating the camp-

ground as a legal, nonconforming use.[1]

In 1983, the City amended the zoning ordinance to allow campgrounds as a conditional use in Wapiti Park's district. Still a nonconforming use, Wapiti Park could have continued to operate the campground without a conditional-use permit. But Wapiti Park sought several licenses from the City, including a liquor license, and subsequently applied for and was granted a conditional-use permit in 1984. The conditional-use permit imposed nine conditions on Wapiti Park's operation of the campground. To address concerns that people were residing permanently at Wapiti Park, one of the conditions prohibited "permanent units for rental purposes" and required "wheels [to] remain on vehicles parked in the campground." Four years later, in 1988, the City amended the zoning ordinance to remove campgrounds as either a conditional or permitted use.

Wapiti Park originally had one building, which contained an office, bar, laundry, restroom, and gathering space for campers. The building was completely destroyed by fire in 1999. In 2000, Wapiti Park sought to replace the building. Before issuing a construction permit and allowing resumption of the use of the building, however, the City required Wapiti Park to apply for an interim-use permit because the building was an accessory structure to the nonconforming use as a campground. The City approved an interim-use permit that was valid for ten years or until the property was redeveloped or sold. After obtaining the permit, Wapiti Park constructed the replacement building.

When the interim-use permit expired in 2010, Wapiti Park requested renewal of the permit to continue service at the replacement building. The City approved the renewal request for the interim-use permit, subject to compliance with numerous conditions, including those set forth in the 1984 conditional-use permit. The City later inspected Wapiti Park and discovered that many individuals "consider[ed] it their permanent residence" and that "there [were] several ... vehicles without wheels within the campground." The City determined that this permanent occupancy violated the conditions of the conditional-use permit and posed a "threat to the public health, safety, morals, comfort, convenience, and general welfare" of the City's residents.[2]

The City gave Wapiti Park several months to comply with the conditions. When Wapiti Park failed to do so, the City adopted resolutions denying renewal of the interim-use permit for the replacement building and revoking the conditional-use permit for the campground.

Subsequently, Wapiti Park sued the City, seeking declarations that its operation of the campground was a nonconform-

1. The zoning ordinance enacted in 1980 expressly protected nonconforming uses, providing that "[a]ny building, structure or use lawfully existing on the effective date of this Ordinance which is not in conformity with the regulations herein prescribed shall be regarded as nonconforming, but may be continued except as and subject to the requirements contained in Section 900.34." Elk River, Minn., Code of Ordinances § 900.04 (1980).

2. More specifically, the City determined that this permanent occupancy contributed to the following public health, safety, and welfare concerns: "[in]adequate facilities for the disposal of manure and solid waste"; "the possibility of sewage, manure and solid waste flowing to or being deposited in the river"; and "a large number of police calls," including calls responding to "a meth lab, numerous assaults, a campfire injury, raw sewage leaks, exploding camper, and a newborn baby staying with [his] parent in a tent during the winter."

ing use; that it did not need to obtain the conditional-use permit to continue that use; that the conditional-use permit was no longer in effect and enforceable against it; and that, even if the campground had not been a nonconforming use, the City's revocation of the permit was unreasonable and arbitrary. Wapiti Park also sought a declaration that it had a right in 2000 to replace the original building and resume its use without obtaining the interim-use permit because the building was an accessory to the campground and the value of its destruction was less than 50 percent of the value of the campground. The City filed a counterclaim to temporarily or permanently enjoin Wapiti Park from operating the campground until it complied with the conditional-use permit.

The parties brought cross-motions for summary judgment, and the district court entered judgment in favor of Wapiti Park. The district court concluded that Wapiti Park's operation of the campground was a nonconforming use that the City could not terminate by revoking the conditional-use permit. The district court also concluded that because the value of the destroyed accessory building was less than 50 percent of the value of the campground, Wapiti Park was entitled to replace the building and resume its use without obtaining the interim-use permit.

The court of appeals reversed. *White v. City of Elk River*, 822 N.W.2d 320 (Minn. App.2012). The court of appeals determined that Wapiti Park's operation of the campground became a nonconforming use after the last zoning change in 1988, that the conditional-use permit issued in 1984 remained in effect, and that Wapiti Park violated the conditions of the permit. *Id.* at 324–26. The court of appeals concluded

that because the conditional-use permit was violated, Wapiti Park no longer had the right to continue the nonconforming use as a campground and the City was authorized to terminate the use by revoking the conditional-use permit. *Id.* at 325–26. Because the court of appeals upheld the City's termination of the nonconforming use as a campground, it did not reach Wapiti Park's claim regarding the destroyed accessory building. *Id.* at 326.

We granted review.

## II.

We first address the City's authority to terminate Wapiti Park's nonconforming use as a campground. Wapiti Park argues that the court of appeals erred by reversing the district court's grant of summary judgment and by holding that the City had the authority to terminate the nonconforming use as a campground by revoking the conditional-use permit. The City counters that reversal of summary judgment was proper because the City was authorized to revoke the conditional-use permit and terminate the nonconforming use when Wapiti Park violated the conditions of the permit.

On appeal from summary judgment, we determine whether genuine issues of material fact exist and whether the district court correctly applied the law. *Mattson Ridge, LLC v. Clear Rock Title, LLP*, 824 N.W.2d 622, 627 (Minn.2012). We apply a de novo standard of review to the district court's application of the law. *Remodeling Dimensions, Inc. v. Integrity Mut. Ins. Co.*, 819 N.W.2d 602, 610 (Minn. 2012).

Here, the material facts are undisputed.[3] We therefore focus our review on

---

**3.** Even though Wapiti Park contends that no one permanently resided on the campground

and therefore it did not violate the conditions of the conditional-use permit, Wapiti Park

two legal issues. We first examine the effect of the conditional-use permit on the campground's status as a nonconforming use. We then analyze whether the City had the authority to terminate the nonconforming use by requiring Wapiti Park to obtain a conditional-use permit to continue operating the campground and subsequently revoking the conditional-use permit.

### A.

As a general matter, a municipality may regulate the use of privately owned land within its borders to guide the development of the community. This authority to regulate land use is granted to municipalities by the Legislature through the state's zoning enabling act; therefore, the scope of that authority is defined by statute. *See* Minn.Stat. §§ 462.351–.365 (2012); *see also* Minn.Stat. § 462.357, subd. 1 ("For the purpose of promoting the public health, safety, morals, and general welfare, a municipality may by ordinance regulate . . . the uses of land. . . ."). We have long upheld a municipality's authority to enact zoning ordinances as a legitimate exercise of its police power. *Hawkins v. Talbot,* 248 Minn. 549, 551, 80 N.W.2d 863, 865 (1957). But we also have recognized limitations—both constitutional and statutory—on that authority. *See id.* at 551, 80 N.W.2d at 865.

One such limitation covers the authority of a municipality to terminate nonconforming uses. A nonconforming use is a use of land that is prohibited under a current zoning ordinance but nonetheless is permitted to continue because the use lawfully existed before the ordinance took effect. *Krummenacher v. City of Minnetonka,* 783 N.W.2d 721, 726 (Minn.2010). To protect the landowner's interest and investment in the existing lawful use, a nonconforming use generally is allowed to continue even after an adverse zoning change. *Hawkins,* 248 Minn. at 552, 80 N.W.2d at 865; *see also* Minn. Stat. § 462.357, subd. 1e(a).[4]

Nonconforming uses are protected by Minnesota's zoning enabling act. More specifically, Minn.Stat. § 462.357, subd. 1e(a), provides, in relevant part:

> Except as otherwise provided by law, any nonconformity, including the lawful use or occupation of land or premises existing at the time of the adoption of an additional control under this chapter, may be continued, including through repair, replacement, restoration, maintenance, or improvement, but not including expansion. . . .

Consistent with section 462.357, subdivision 1e(a), we have repeatedly acknowledged that although a "zoning ordinance 'may constitutionally prohibit the creation

---

fails to raise a genuine issue of material fact that would preclude summary judgment on this issue. To raise a genuine issue of material fact, Wapiti Park "must present more than evidence which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions." *Valspar Refinish, Inc. v. Gaylord's, Inc.,* 764 N.W.2d 359, 364 (Minn.2009) (citation omitted) (internal quotation marks omitted). Wapiti Park makes only general assertions of its compliance with the conditional-use permit. It provides no citations to the record in support of these assertions; and the record is replete with evidence, including testimony from campground residents, that demonstrates that many of the residents permanently occupied the campground.

4. We refer to "nonconforming use" throughout our analysis to indicate a use of land that is legally permitted, despite its nonconformity with the current zoning ordinance, because the use existed prior to the zoning ordinance's enactment or adverse modification. *See Krummenacher,* 783 N.W.2d at 726.

of uses which are nonconforming,' " existing nonconforming uses must be permitted to remain. *Krummenacher*, 783 N.W.2d at 726 (quoting *Cnty. of Freeborn v. Claussen*, 295 Minn. 96, 99, 203 N.W.2d 323, 325 (1972)); *see also Hooper v. City of St. Paul*, 353 N.W.2d 138, 140 (Minn.1984) (deeming it a "fundamental principle" that uses of land that are "lawfully existing at the time of an adverse zoning change may continue to exist until they are removed or otherwise discontinued"); *cf. Connor v. Twp. of Chanhassen*, 249 Minn. 205, 216, 81 N.W.2d 789, 797–98 (1957) (stating that property interests are subject to constitutional protections).

■ It is undisputed that Wapiti Park first became a nonconforming use in 1980 when the City enacted the zoning ordinance. But the parties vigorously dispute what effect, if any, the conditional-use permit obtained in 1984 had on the campground's nonconforming-use status. Wapiti Park maintains that its application for and receipt of the conditional-use permit did not affect the campground's status as a nonconforming use and that the nonconforming use continued unchanged to the present.[5] The City counters that the campground ceased to be a nonconforming use in 1984 when Wapiti Park obtained a conditional-use permit; and when the City last amended the zoning ordinance in 1988, the campground again became a nonconforming use that was regulated by the conditions of the permit.

What effect, if any, Wapiti Park's application for and receipt of the conditional-use permit in 1984 had on the campground's status as a nonconforming use is an issue of first impression for us. Specifically, we have not addressed whether a landowner of a nonconforming use, who voluntarily complies with a later-enacted zoning ordinance, relinquishes the nonconforming-use status and the right to operate under that status in the future.

The decisions of other courts that have addressed this issue are split. *See* 6 Norman Williams, Jr. & John M. Taylor, *American Land Planning Law* § 123:17 (Supp.2013) (discussing the different approaches courts have taken in resolving whether a landowner of a nonconforming use waives the right to continue the nonconforming use if the use conforms to the zoning ordinance). For example, the Con-

---

**5.** The City initially contends that Wapiti Park's primary argument—that its nonconforming use arose in 1980 and that therefore the conditional-use permit is unenforceable—is not properly submitted for our consideration because it was raised for the first time on appeal and is barred by the applicable statute of limitations and doctrines of waiver and laches. The City's contention lacks merit. Wapiti Park presented this argument in its complaint and in its motion for summary judgment. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988) ("A reviewing court must generally consider only those issues that the record shows were presented and considered by the trial court in deciding the matter before it." (citations omitted) (internal quotation marks omitted)). And regardless of whatever statute of limitations period or waiver and laches analysis applies, this dispute did not arise in 1984 when the City granted the

conditional-use permit. This dispute arose in 2011 when the City indicated its intent to revoke the conditional-use permit. *See Onvoy, Inc. v. ALLETE, Inc.*, 736 N.W.2d 611, 617–18 (Minn.2007) (explaining that one requirement for a justiciable declaratory judgment action is that it "involves a genuine conflict in tangible interests between parties with adverse interests"); *Aronovitch v. Levy*, 238 Minn. 237, 242, 56 N.W.2d 570, 574 (1953) (stating that "laches is an equitable doctrine intended to prevent one who has not been diligent in asserting a known right from recovering at the expense of one who has been prejudiced by the delay"). The City cannot establish unfair prejudice because Wapiti Park did not initiate a lawsuit until the City actually affected Wapiti Park's nonconforming-use rights by revoking the right to operate as a campground.

necticut Appellate Court in *Taylor v. Zoning Board of Appeals,* held that the owner of a nonconforming sand and gravel mine that existed before the zoning ordinance was enacted, who applied for and received a conditional-use permit for the nonconforming use, did not extinguish his right to continue that use independent of the permit. 65 Conn.App. 687, 783 A.2d 526, 531–32 (2001). Emphasizing that nonconforming uses are constitutionally protected property rights, the *Taylor* court reasoned that the owner "acquired, and continue[d] to have, a valid ... nonconforming use" and did not abandon that use by applying for the conditional-use permit. *Id.* at 532. By contrast, the Court of Appeals of Maryland in *Purich v. Draper Properties, Inc.,* held that owners of a nonconforming gas station who obtained a special exception could not revive the prior nonconforming use when the special exception was later revoked. 395 Md. 694, 912 A.2d 598, 607–15 (Md.2006). After obtaining the special exception, the *Purich* court reasoned, the owners could not operate the station "where the use is both a nonconforming use and a special exception use *when it is the same use* because the permitted use extinguishes the nonconforming character of the use." *Id.* at 612.

 We conclude that a landowner does not surrender the right to continue a nonconforming use by obtaining a conditional-use permit unless the landowner validly waives that right. We have long held that, except as limited by public policy, a person may waive a constitutional or statutory right. *See In re Welfare of G.L.H.,* 614 N.W.2d 718, 720–23 (Minn.2000); *Stephenson v. Martin,* 259 N.W.2d 467, 470 (Minn. 1977). A municipality may terminate a landowner's right to continue a nonconforming use by exercise of its eminent domain power or by written agreement

with the property owner. But section 462.357, subdivision 1e(a), protects a landowner's nonconforming use rights against a municipality's zoning authority. *See Krummenacher,* 783 N.W.2d at 726. A landowner must validly waive such nonconforming use rights before a municipality can alter or extinguish the nonconforming use through further land-use regulation.

 The definition of waiver in Minnesota is well-established: it is the intentional relinquishment of a known right. *Valspar Refinish, Inc. v. Gaylord's, Inc.,* 764 N.W.2d 359, 367 (Minn.2009). Consequently, a valid waiver requires two elements: (1) knowledge of the right, and (2) an intent to waive the right. *Frandsen v. Ford Motor Co.,* 801 N.W.2d 177, 182 (Minn.2011). "Waiver may be express or implied—'knowledge may be actual or constructive and the intent to waive may be inferred from conduct.'" *Id.* (quoting *Valspar,* 764 N.W.2d at 367). But waiver is generally a question of fact that "is rarely to be inferred as a matter of law." *Valspar,* 764 N.W.2d at 367 (citations omitted) (internal quotation marks omitted). The burden of proving knowledge and intent rests with the party asserting waiver. *Frandsen,* 801 N.W.2d at 182.

Under our established waiver jurisprudence, Wapiti Park's application for the conditional-use permit, standing alone, cannot constitute a valid waiver. Although Wapiti Park knew of its nonconforming-use rights as a campground in 1984 when it applied for the conditional-use permit, the City has not proved that Wapiti Park intended to waive those rights. And nothing in the record evinces such an intent or even creates a genuine issue of fact that, by applying for and accepting the conditional-use permit, Wapiti Park subordinated its rights to the City's zoning regime.[6]

6. Our holding on the legal effect of the conditional-use permit is confined to the facts pre-

Thus, the conditional-use permit did not itself alter the campground's status as a nonconforming use and did not govern that use from 1980 to the present—including when the City revoked the conditional-use permit in 2010.

### B.

■■■ Having concluded that the record before us does not establish that Wapiti Park waived its right to operate the campground as a nonconforming use by applying for and obtaining the conditional-use permit, we next consider whether the City has the authority to terminate that use by revoking the permit. Although protected, nonconforming uses are nonetheless inconsistent with a municipality's long-term development plan. As we have acknowledged, the policy informing the nonconformity doctrine "is to increase the likelihood that such uses will in time be eliminated due to obsolescence, exhaustion, or destruction." *Claussen*, 295 Minn. at 99, 203 N.W.2d at 325. Therefore, municipalities often promote the gradual elimination of nonconforming uses to establish a more "uniform use of the land consistent with the overall comprehensive zoning plan." *Id.*

To that end, the Legislature has granted municipalities the statutory authority to restrict nonconforming uses. Under section 462.357, subdivision 1e(a), a landowner may continue a nonconforming use notwithstanding repair, replacement, restoration, maintenance, or improvement of the use. But a municipality may prevent a landowner from expanding a nonconforming use. Minn.Stat. § 462.357, subd. 1e(a). And a municipality may impose on noncon-

forming uses "reasonable regulations to prevent and abate nuisances and to protect the public health, welfare, or safety." *Id.*, subd. 1e(b).

When restrictions on nonconforming uses prove ineffective, however, the Legislature has granted municipalities the statutory authority to terminate nonconforming uses. Minnesota's zoning enabling act contemplates four circumstances under which a nonconforming use may terminate. The first circumstance is by exercise of eminent domain. Minn.Stat. § 465.01 (2012). Two other circumstances are by operation of law when the use has been "discontinued for a period of more than one year," Minn.Stat. § 462.357, subd. 1e(a)(1), or when the use has been "destroyed by fire or other peril to the extent of greater than 50 percent of its estimated market value," *id.*, subd. 1e(a)(2). A fourth circumstance for terminating a nonconforming use is by judicial determination that the use is a nuisance. *Id.*, subd. 1d. Additionally, a municipality and a property owner may terminate a nonconforming use by written agreement.

■■■ To resolve whether the City acted within its authority when it terminated Wapiti Park's nonconforming-use status by revoking the conditional-use permit, we must determine whether the statute grants the City that authority. Statutory interpretation presents a question of law, which we review de novo. *Schatz v. Interfaith Care Ctr.*, 811 N.W.2d 643, 649 (Minn. 2012). When interpreting a statute, our goal is to ascertain and effectuate the Legislature's intent. *Id.; see also* Minn.Stat. § 645.16 (2012). We first determine whether the statutory language is clear.

sented on this limited record. Rather than proceeding with discovery, both sides filed cross-motions for summary judgment. Neither party submitted "specific facts," *see* Minn. R. Civ. P. 56.05, through affidavits,

deposition testimony, or certified documents, that supplement the public meeting minutes and explain Wapiti Park's decision to apply for, and the City's decision to issue, the conditional-use permit.

*Staab v. Diocese of St. Cloud,* 813 N.W.2d 68, 72 (Minn.2012). Statutory language lacks clarity or is ambiguous when, as applied to the facts, it is susceptible to more than one reasonable interpretation. *Id.* at 72–73. If the language is unambiguous, we enforce the statute's plain and ordinary meaning. *Emerson v. Sch. Bd. of Indep. Sch. Dist. 199,* 809 N.W.2d 679, 682 (Minn.2012); *see also* Minn.Stat. § 645.08(1) (2012).

We conclude that a municipality may terminate a nonconforming use of land by exercise of its eminent domain power, Minn.Stat. § 465.01; or upon a showing that the use was "discontinued for a period of more than one year," Minn.Stat. § 462.357, subd. 1e(a)(1); that the use was "destroyed by fire or other peril to the extent of greater than 50 percent of its estimated market value," *id.,* subd. 1e(a)(2); or that the use is a nuisance, *id.,* subd. 1d. These governing statutory provisions do not include the revocation of a previously issued conditional-use permit. Had the Legislature intended the revocation of a conditional-use permit to be a permissible method by which a municipality could terminate a nonconforming use, it easily could have said so. Recognizing this newly proposed mode of terminating a nonconforming use under the guise of statutory construction would impermissibly add language to the governing statute that does not exist. *See Premier Bank v. Becker Dev., LLC,* 785 N.W.2d 753, 760 (Minn. 2010) (stating that this court will not add "words or meaning to a statute that are purposely omitted or inadvertently overlooked" (citation omitted) (internal quotation marks omitted)).

Not one of the four statutorily authorized events that could terminate Wapiti Park's nonconforming use occurred. The City did not exercise its power of eminent domain, Wapiti Park has continued to op-erate as a campground without interruption since 1973, the campground was never destroyed by fire to an extent greater than 50 percent of its value, and the City did not bring a nuisance action. Moreover, the City does not point to any statutory or Minnesota common law to support its claim that it has the authority to terminate Wapiti Park's nonconforming use by revoking the conditional-use permit. Consequently, the City's revocation of the conditional-use permit did not eliminate Wapiti Park's right to continue the nonconforming use as a campground.

The City contends that it properly terminated Wapiti Park's nonconforming use as a campground by revoking the conditional-use permit. In support of its contention, the City focuses on language from section 462.357, subdivision 1e(a), which protects only the right of "the *lawful* use . . . of land . . . existing at the time of the adoption of an additional control" to continue after that use becomes nonconforming. (Emphasis added.) Because Wapiti Park violated the conditions of the conditional-use permit, the City reasons, its use of the land was *unlawful* and therefore no longer a protected nonconforming use. But the City's rationale is based on the assumption that Wapiti Park's nonconforming status first arose in 1988 and was then governed by the conditional-use permit. As we have concluded, the record indicates that Wapiti Park's use of the property began in 1973, that it became a nonconforming use in 1980, and that the conditional-use permit did not set the parameters of that use through 1988 and beyond.

Amicus curiae League of Minnesota Cities argues that municipalities must be empowered to enforce conditional-use permits to protect the public health, safety, and welfare of their citizens. In advancing this argument, League of Minnesota Cities

raises legitimate policy concerns. Our ruling, however, does not prevent municipalities from otherwise enforcing regulations to protect the public against harmful nonconforming uses. The Legislature has authorized municipalities to "impose upon nonconformities reasonable regulations . . . to protect the public health, welfare, or safety." Minn.Stat. § 462.357, subd. 1e(b). Municipalities can enforce these regulations against nonconformities, for instance, by seeking a temporary injunction against the nonconformity to cease operations until it complies with the regulations. *See* Minn.Stat. § 462.362 (2012) ("A municipality may also enforce any provision of sections 462.351 to 462.364 or of any ordinance adopted thereunder by mandamus, injunction, or any other appropriate remedy in any court of competent jurisdiction."). Through its statutory scheme, the Legislature affirms the right of municipalities to *temporarily* enjoin nonconforming uses that fail to comply with public-welfare regulations, but the Legislature does not authorize municipalities to *permanently* terminate nonconforming uses by revoking conditional-use permits. This policy decision of the Legislature strikes a balance between a private landowner's nonconforming-use rights and the public municipality's regulatory interests.

In sum, a nonconforming use is a constitutionally protected property right, and a municipality's power to terminate this use is limited by statute to the four specific circumstances articulated above. Revocation of a conditional-use permit falls outside of that statutory authority. Accordingly, the City lacked the statutory authority to terminate Wapiti Park's nonconforming use as a campground by revoking the conditional-use permit.

## III.

■ We next address the City's authority to require an interim-use permit for the replacement of the destroyed accessory building and resumption of its regulated use. Wapiti Park argues that it had the right to replace the building without first obtaining an interim-use permit because the building was an accessory structure to the nonconforming use as a campground. The City counters that it acted within its statutory authority by requiring Wapiti Park to obtain an interim-use permit before constructing a replacement building because, although the building was accessory to the nonconforming use, the value of the damage exceeded 50 percent of the total value of the building.[7]

Here, the parties stipulated and the district court concluded that, because the value of the destroyed accessory building was less than 50 percent of the estimated market value of the entire nonconforming campground, Wapiti Park would have the

---

**7.** As with the first issue, the City initially contends that Wapiti Park's primary argument here-that it had a right to replace and resume use of the destroyed accessory building without obtaining the City's permission—is not properly submitted for our consideration because it is barred by the applicable statute of limitations and the doctrines of waiver and laches. The City's contention again lacks merit. The dispute regarding the interim-use permit did not arise in 2000 when the City granted the permit, but in 2011 when the City denied renewal of the permit. *See Onvoy*, 736 N.W.2d at 617–18 (stating that a declaratory judgment action must "involve[ ] a genuine conflict in tangible interests between parties with adverse interests"); *Aronovitch*, 238 Minn. at 242, 56 N.W.2d at 574 (qualifying that the doctrine of laches is only "intended to prevent one who has not been diligent in asserting a *known* right from recovering at the expense of one who has been prejudiced by the delay" (emphasis added)). The City has failed to show how Wapiti Park's commencement of a legal action when it was actually aggrieved by the City's requirement of the interim-use permit is either untimely or unfairly prejudicial.

statutory right under current Minnesota law to replace the building without an interim-use permit. That conclusion was based on section 462.357, subdivision 1e(a)(2), which provides, in relevant part, that "any nonconforming use [will terminate if] destroyed by fire ... to the extent of greater than 50 percent of its estimated market value." By operation of this statute, a landowner can replace a destroyed building that is accessory to a nonconforming use without impermissibly expanding the nonconforming use if the value of the building was less than 50 percent of the market value of the nonconforming use as a whole.

Section 462.357, subdivision 1e(a)(2), however, was not enacted until 2001. *See* Act of May 24, 2001, ch. 174, § 1, 2001 Minn. Laws 556, 556–57. The statute was not in effect at the time of the 1999 fire or the 2000 interim-use permit. This provision, therefore, does not govern the replacement of the accessory building.

Rather, the provision regulating the replacement of the accessory building in effect when the building was destroyed was Elk River, Minn., Code of Ordinances § 900.34(9) (1982). This provision governs the replacement of the destroyed accessory building. Under Code section 900.34(9):

> No nonconforming building or structure ... which has been damaged by fire ... to the extent of more than fifty percent (50%) of its assessed market value shall be restored except in conformity with the regulations of this Ordinance. A nonconforming building or structure which is damaged to a lesser degree may be restored and its previous use continued or resumed provided that restoration is completed within one (1) year following its damage and no enlargement occurs.

By contrast to section 462.357, subdivision 1e(a)(2), Code section 900.34(9) unambiguously measures the 50–percent valuation based on the loss to the destroyed building, not based on the loss to the entire nonconforming use. Under this metric, if the value of the loss is greater than 50 percent of the building—not 50 percent of the nonconforming use (here, as a campground)—when replacing the accessory building, the landowner must comply with the applicable zoning regulations in place at the time of the replacement.

We conclude that the City acted within its authority when it required Wapiti Park to obtain the interim-use permit to replace the destroyed accessory building and resume its regulated use. The parties do not dispute that the building was a total loss. Because the destruction to the building was greater than 50 percent of its total value, Wapiti Park was required to obtain the City's permission to replace the building to avoid an impermissible expansion of the nonconforming use. Our holding as to this matter does not prevent Wapiti Park from continuing to operate the campground as a nonconforming use. Nor does it require Wapiti Park to destroy the replacement building. However, Wapiti Park may not lawfully use the building until it obtains renewal of the interim-use permit and complies with the conditions of the permit.

### IV.

In summary, we reverse the decision of the court of appeals and reinstate the portion of the district court's decision granting summary judgment to Wapiti Park on the ground that the City's revocation of the conditional-use permit did not terminate Wapiti Park's nonconforming use as a campground. However, we reverse the portion of the district court's decision granting summary judgment to Wapiti Park on the interim-use-permit issue and

hold that the City did not exceed its authority by requiring Wapiti Park to obtain an interim-use permit before constructing the replacement building and resuming its regulated use. We remand to the district court for further proceedings on the remaining issues, including those issues raised in the City's motion for summary judgment pertaining to the City's counterclaims against Wapiti Park.

Reversed and remanded.