*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-0341**

Lorraine White,
Trustee for the Lorraine M. White Trust, et al.,
Respondents,

vs.

City of Elk River,
Appellant

**Filed October 26, 2015**
**Affirmed**
**Worke, Judge**

Sherburne County District Court
File No. 71-CV-11-1266

George C. Hoff, Shelley M. Ryan, Hoff, Barry & Kozar, P.A., Eden Prairie, Minnesota (for appellant)

James G. Robin, Dustin D. Fossey, Wayzata Law Group, LLC, Wayzata, Minnesota (for respondents)

Susan L. Naughton, League of Minnesota Cities, St. Paul, Minnesota (for amicus curiae)

Considered and decided by Halbrooks, Presiding Judge; Worke, Judge; and Hooten, Judge.

**U N P U B L I S H E D   O P I N I O N**

**WORKE**, Judge

Appellant City of Elk River challenges the district court's denial of injunctive relief to preclude respondents from allowing people to permanently reside at their

campground, arguing that the district court erred by concluding that Minn. Stat. § 327.14 (2014) does not prohibit residency at the campground. We affirm.

**FACTS**

Respondent Wapiti Park Campgrounds, Inc., a 52-acre campground owned by respondent Lorraine White, trustee for the Lorraine M. White Trust, is located within appellant City of Elk River.

This is the second appeal arising out of an ongoing dispute between respondents and the city over the operation of Wapiti Park. In the first appeal, the supreme court resolved the land-use aspects of the parties' dispute, holding that Wapiti Park is a nonconforming use and did not lose that status by applying for a conditional-use permit, but that the city could require Wapiti Park to obtain an interim-use permit before using a building that was replaced after a fire. *White v. City of Elk River*, 840 N.W.2d 43, 51-52, 55 (Minn. 2013). The supreme court identified four methods in which the city could seek to terminate Wapiti Park's nonconforming use and noted that the city had not undertaken any of those methods. *Id.* at 53.[1] The supreme court remanded the case to the district court for "further proceedings on . . . remaining issues, including those issues raised in the City's motion for summary judgment pertaining to the City's counterclaims against Wapiti Park." *Id*. at 56.

---

[1] The methods are eminent domain, showing that the use has been discontinued for more than one year, showing that the use was destroyed by fire or other peril to the extent of greater than 50 percent of its market value, or establishing a nuisance. *White*, 840 N.W.2d at 53.

Following remand, the city moved for summary judgment on its counterclaim alleging that respondents were violating Minn. Stat. § 327.14 by allowing campers to permanently reside at Wapiti Park. There is no factual dispute that Wapiti Park has allowed permanent residents for years. The city noted that Wapiti Park is licensed as a "recreational camping area" as defined in Minn. Stat. § 327.14, subd. 8 and argued that, according to the definition supplied, recreational camping areas are not permitted to have permanent residents. The city also claimed that Wapiti Park allowed permanent structures, which are not within the definition of "recreational camping vehicle" as defined in Minn. Stat. § 327.14, subd. 7. The city requested a permanent injunction to preclude Wapiti Park from allowing permanent residents and structures.

The district court examined the text of Minn. Stat. § 327.14, subd. 8, and concluded that the definition of "recreational camping area" did not preclude permanent residency. The court then stated that it could not conclude as a matter of law that the permanent structures on Wapiti Park were outside the definition of "recreational camping vehicle" as defined in Minn. Stat. § 327.14, subd. 7, and that the city had failed to show injury or the threat of injury stemming from these permanent structures. The district court denied the city's request for injunctive relief for want of a cause of action to support the equitable remedy, and because the city failed to show injury or threat of injury to support injunctive relief.

The city appealed. After briefing and oral argument, this court requested supplemental briefing on the issue of whether the city has standing to assert a claim under

Minn. Stat. § 327.24, subd. 3 (2014).  The parties submitted supplemental briefs, and the appeal was submitted for decision.

### DECISION

On appeal from an order denying injunctive relief, our review is for abuse of discretion. *Williams v. Nat'l Football League*, 794 N.W.2d 391, 395 (Minn. App. 2011), *review denied* (Minn. Apr. 27, 2011).  But when the district court's decision is based on its interpretation of a statute, our review is de novo. *Id.*  "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2014).  "We construe statutes to effect their essential purpose but will not disregard a statute's clear language to pursue the spirit of the law." *Lee v. Fresenius Med. Care, Inc.*, 741 N.W.2d 117, 123 (Minn. 2007).

This appeal requires us to interpret and apply several provisions of Minn. Stat. §§ 327.14-.28 (2014), which govern manufactured home parks and recreational camping areas.  Minn. Stat. § 327.14 is a definitions section for the statutory range and defines a "recreational camping area" as "any area, whether privately or publicly owned, used on a daily, nightly, weekly, or longer basis for the accommodation of five or more tents or recreational camping vehicles free of charge or for compensation."  Minn. Stat. § 327.14, subd. 8.[2]  Minn. Stat. 327.14, subd. 7 also defines "recreational camping vehicle" to include

---

[2]  The statutory definition also includes seven exclusions not relevant here.  Minn. Stat. § 327.14, subd. 8 (1)–(7).

4

(1) any vehicular, portable structure built on a chassis, designed to be used as a temporary dwelling for travel, recreational, and vacation uses;

(2) any structure designed to be mounted on a truck chassis for use as a temporary dwelling for travel, recreation, and vacation;

(3) any portable, temporary dwelling to be used for travel, recreation, and vacation, constructed as an integral part of a self-propelled vehicle; and

(4) any folding structure, mounted on wheels and designed for travel, recreation, and vacation use.

Minn. Stat. § 327.20 sets forth rules applicable to recreational camping areas, and Minn. Stat. § 327.24, subd. 3, provides a private right of action to "[a]ny person injured or threatened with injury by a violation of sections 327.14 to 327.28."

Respondents assert that the city has not identified any conduct by Wapiti Park that could constitute a violation of Minn. Stat. §§ 327.14-.28. We agree. Nothing in the plain language of these statutory provisions prohibits permanent residence at a recreational camping area. The city asserts that Minn. Stat. § 327.14, subds. 7 and 8 prohibit recreational camping areas from allowing permanent structures or residents. But those subdivisions are part of a set of definitions that identify the scope of the statute and include no prohibitive language. The fact that the statute defines recreational camping area and recreational camping vehicle for purposes of determining statutory scope does not limit an area that qualifies as a recreational camping area from undertaking activities not within the definition, except to the extent that such activities are otherwise prohibited by statute or rule.[3]

---

[3] The city asserts that the district court erred by construing the phrase in Minn. Stat. § 327.14, subd. 8, "daily, nightly, weekly, or longer basis," to encompass indefinite

Our conclusion that the city fails to identify conduct that would constitute a violation of Minn. Stat. §§ 327.14-.28 is fatal to the city's claim. Accordingly, the district court did not err by dismissing the claim and denying the city's request for a permanent injunction.[4]

**Affirmed.**

---

periods of time. We agree that, under the canon of ejusdem generis, the statute cannot be construed so broadly. *See* Minn. Stat. § 645.08(3) (2014) (providing that "general words are construed to be restricted in their meaning by preceding particular words"); *Black's Law Dictionary* 594 (9th ed. 2009) (defining canon). But we nevertheless conclude that the statute does not prohibit permanent residency.

[4] Our conclusion may also implicate an issue of statutory standing, which asks whether a party "has a cause of action under the statute." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 98 n.2, 118 S. Ct. 1003, 1014 n.2 (1998). "The question is closely related to the merits inquiry (oftentimes overlapping it) and is analytically distinct from the question whether a . . . court has subject-matter jurisdiction to decide the merits of a case." *Roberts ex rel. H.F.W. & T.W. v. Hamer*, 655 F.3d 578, 580 (6th Cir. 2001); *cf. Krueger v. Zeman Constr. Co.*, 781 N.W.2d 858, 858, 861-63 (Minn. 2010) (affirming dismissal for failure to state a claim of action by an individual who had no right to sue under the Minnesota Human Rights Act, discussing the issue both in terms of "statutory standing" and as a question of whether the statute "provide[s] a cause of action"). Because the statutory-standing issue in this case does not appear to be jurisdictional, and because the city's claim clearly fails on the merits, we do not address whether the city's claim also fails for lack of statutory standing.